[No. 11130-0-III.   Division Three.   December 10, 1992.]

*In the Matter of the Marriage of* CYNTHIA ANN
MCDOLE, *Appellant, and* JAMES PAUL
MCDOLE, *Respondent.*

*Tom Scribner* and *Minnick-Hayner, P.S.,* for appellant.

*Richard F. Monahan* and *Roach, Monahan & Lowry,* for respondent.

SWEENEY, J. — The marriage of James and Cynthia McDole was dissolved on November 23, 1988. Mrs. McDole (now Mrs. Hatch) was designated as the primary residential parent for the McDoles' son, Joseph McDole. Mrs. Hatch moved to Utah and remarried in March 1990. Mr. McDole filed a motion for temporary custody and for an order to require Mrs. Hatch to show cause why she should not be held in contempt for removing the child from the county without the court's permission. The court modified the custody temporarily, and later, permanently, to designate Mr. McDole as the primary residential parent. Mrs. Hatch appeals the modification. Mr. McDole requests attorney fees and costs on appeal. We reverse.

### FACTS AND PROCEDURAL BACKGROUND

Mrs. Hatch and Mr. McDole were married February 22, 1986. They had one child, Joseph McDole (Joey), born January 12, 1987. Mrs. Hatch's son from a prior marriage, James Franklin (Jimmy), also lived with them. In 1988, Mrs. Hatch petitioned for dissolution of the marriage; both parents petitioned for designation as Joey's primary residential parent.

The court found both parents fit and capable to fulfill all parenting functions but designated Mrs. Hatch the primary residential parent because she had been Joey's primary care giver. Their marriage was dissolved on November 23, 1988. Mr. McDole was awarded visitation consisting of 2 days a week, plus additional vacations and holidays. In its oral comments, the court said "[b]oth parties will be enjoined from taking the child from Walla Walla County without the Court's permission." This restriction, however, does not appear in the dissolution decree.

Following the dissolution, Mr. McDole visited Joey without interference from Mrs. Hatch. A dispute developed, however, over Mr. McDole's visitation with Jimmy, his stepson. After an unsuccessful effort at mediation, the court ordered scheduled visitation with Jimmy. Thereafter, Mr. McDole exercised his visitation with Jimmy without interference from Mrs. Hatch.

On March 9, 1990, Mrs. Hatch moved to Utah to marry Dr. Lance Hatch. Prior to leaving, she consulted an attorney who, after reviewing the dissolution decree, advised her that there was no prohibition to her removing the children from the state. She took Joey and Jimmy without notifying Mr. McDole. On March 9, Mr. McDole received a letter from Mrs. Hatch's attorney suggesting a revised visitation schedule due to the move.

Three days later, on March 12, Mr. McDole filed a motion for an order awarding him temporary custody and requiring Mrs. Hatch to show cause why she should not be held in contempt for violating the court's order by removing Joey from Walla Walla County. On March 15, Mrs. Hatch moved to continue argument on the motion because she was getting married and would not be able to appear. The judge ordered Mrs. Hatch to provide an address and a telephone number where the child could be reached and postponed ruling on the continuance. On March 19, the judge denied the continuance because only a business telephone number had been provided. The court indicated that a continuance might still be granted if Mrs. Hatch complied by providing a

telephone number where Joey could be reached. Mrs. Hatch did provide a residential telephone number, but the March 23 hearing proceeded as scheduled.

At the March 23 hearing, the attorneys argued over whether the continuance had already been denied. Mr. McDole's attorney said it had. Mrs. Hatch's attorney argued that: a continuance should be granted; she had complied with the order to provide the telephone number; and the move was not legal grounds for a change in custody.

Between March 9 and 23, Mr. McDole talked to Joey by phone twice, briefly. Mrs. Hatch did not appear at the March 23 hearing. The same trial judge, who had presided over the dissolution proceeding and ordered visitation for Mr. McDole's stepson Jimmy, commented that "[t]his is too much messing around." He concluded that Mrs. Hatch was not being candid with the court and changed custody temporarily to Mr. McDole, pending a modification hearing.

Mr. McDole's motion to modify the parenting plan was heard on July 2, 1990. Both parents testified that they wished to be the primary residential parent. Richard Garcia, a social worker, testified that he had evaluated Joey following his return from Utah and found that Joey may have been injured by the move. His opinion was based on the fact that Joey cried when talking to Mr. McDole once from Utah and cried at night for 2 weeks after returning to Walla Walla.

The court found that Mrs. Hatch was extremely resistive to visitation, and that this represented a substantial change in circumstances. It found that she was desirous of and would take actions to limit Joey's contact with his father and, therefore, the environment for the child would be detrimental if he remained with his mother. The court further found that modification was necessary for the best interests of Joey's emotional health. On the basis of these findings, the court concluded that the original decree of dissolution should be modified to designate Mr. McDole as the primary residential parent.

Mrs. Hatch appeals the modification contending that the findings of the court are not supported by sufficient evidence and the conclusion of law is erroneous. Mr. McDole requests attorney fees and costs on appeal.

## STANDARD OF REVIEW

██ A trial court's award of custody will not be disturbed on appeal absent a manifest abuse of discretion. *Chapman v. Perera*, 41 Wn. App. 444, 446, 704 P.2d 1224, *review denied*, 104 Wn.2d 1020 (1985). An abuse of discretion occurs when no reasonable person would have ruled as the trial court did on the facts before it. *See In re Marriage of Pilant*, 42 Wn. App. 173, 176, 709 P.2d 1241 (1985). Findings of the trial court will not be disturbed if supported by substantial evidence. *Chapman*, at 449. Conclusions of law must be upheld if they are supported by the findings of fact. *Chapman*, at 449.

## MODIFICATION OF PRIMARY RESIDENTIAL PARENT

The court is prohibited from modifying a prior custody decree unless it finds upon the basis of facts, arising since the prior plan: (1) a substantial change has occurred in the circumstances of the child or the nonmoving party, and (2) modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custody established by the decree or parenting plan unless it finds: (3) the child's present environment is detrimental to the child's physical, mental, or emotional health; and (4) the harm likely to be caused by a change of environment is outweighed by the advantage of the change to the child. Former RCW 26.09.260(1)(c); *Anderson v. Anderson*, 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied*, 86 Wn.2d 1009 (1976).[1]

██ Custodial changes are very disruptive to children. *In re Marriage of Stern*, 57 Wn. App. 707, 712, 789 P.2d 807,

---

[1] Interference with visitation may also result in modification of custody decrees, but only if the parent has been found in contempt of court two times within 3 years or been convicted of custodial interference. Former RCW 26.09-.260(1)(d). Mrs. Hatch has not been held in contempt or convicted of custodial interference, therefore this portion of the statute is not applicable.

*review denied,* 115 Wn.2d 1013 (1990); *Anderson,* at 368. Thus, "[t]here is a strong presumption in the statutes and the case law in favor of custodial continuity and against modification" of custody. *In re Marriage of Roorda,* 25 Wn. App. 849, 851, 611 P.2d 794 (1980); *Stern,* at 712.

Mr. McDole contends that Mrs. Hatch's lack of cooperation regarding visitation is sufficient to support the court's findings of a substantial change in circumstances and to further support the court's finding that Joey's environment will be detrimental. We disagree.

The evidence here does not support a finding of a substantial change in circumstances. The only change in circumstances since entry of the original decree has been Joey's move to Utah and his mother's initial lack of cooperation regarding visitation with Jimmy, following the initial decree, and with Joey after her move to Utah.

Custody cannot be used to punish a parent for wrongful conduct. The best interests of the child must be the controlling consideration. *Thompson v. Thompson,* 56 Wn.2d 244, 250, 352 P.2d 179 (1960); *In re Marriage of Murphy,* 48 Wn. App. 196, 200, 737 P.2d 1319 (1987).

In *Murphy,* a mother, who had joint custody of a child with the father, left the state with the child in violation of the court's order. The mother petitioned for sole custody with reasonable visitation by the father. The trial court granted the mother's motion. On appeal, this court affirmed. *Murphy,* at 197-201. We also noted in *Murphy,* at page 200, that the proper sanction for violating a court order is contempt, and that violation of a court order could not be the controlling consideration as to whether a modification of custody was appropriate.

We do not find substantial evidence in this record sufficient to support a substantial change in circumstances or any evidence of the other three requirements for a change of custody. Former RCW 26.09.260(1); *Anderson,* at 368. At best, the evidence supports finding that Mrs. Hatch was not cooperative in providing visitation, she removed Joey from Walla Walla without advising Mr. McDole and in violation

of a court order (albeit an oral order), and Joey may have been distressed when his mother moved him to Utah and when he returned to Walla Walla. There is no evidence, however, on which the trial court could find that Joey's environment while living with his mother was, in any way, detrimental to his physical, mental, or emotional health.

Both Mr. McDole and Mrs. Hatch are fit and loving parents who are each capable of providing an environment conducive to Joey's physical, mental, and emotional health. This was true when the trial court designated Mrs. Hatch as the primary residential parent in 1988 and there is nothing to support a finding that this has changed. Mrs. Hatch had been the primary care giver and residential parent for Joey's first 3 years. Mr. McDole has not overcome the strong presumption in favor of custodial continuity and against modification of custody. RCW 26.09.260; *Roorda*, at 851.

The concern of Mr. McDole and the trial court that Mrs. Hatch will take steps to interfere with or limit Mr. McDole's visitation is perhaps justifiable, but those concerns without more are not grounds for changing custody. Actual interference with visitation is grounds for contempt. RCW 26.09-.160.

The modification order designating Mr. McDole the primary residential parent is reversed. The case is remanded for establishment of a visitation schedule, and a review of child support. Mr. McDole's request for attorney fees and costs on appeal is denied.

SHIELDS, C.J., and THOMPSON, J., concur.

Reversed at 122 Wn.2d 604 (1993).