122 Wn.2d 604 (1993)
859 P.2d 1239
In the Matter of the Marriage of CYNTHIA ANN McDOLE, Respondent, and JAMES PAUL McDOLE, Petitioner.
No. 60033-3.
The Supreme Court of Washington, En Banc.
October 21, 1993.
Richard F. Monahan and Roach & Monahan, for petitioner.
Tom Scribner and Minnick-Hayner, P.S., for respondent.
*605 PER CURIAM:
James McDole seeks review of a Court of Appeals decision reversing a child custody modification order which had been entered in his favor. We grant review, reverse the Court of Appeals, and reinstate the trial court's decision.
James and Cynthia McDole (now Hatch) married in 1986. Each had children from a prior marriage. A son, Joseph, was born to McDole and Hatch in January 1987. They separated a little more than a year later, in March 1988.
A dissolution decree was entered in November 1988. McDole and Hatch had each sought primary residential care of Joseph. The court found each parent was capable of caring for Joseph, but awarded primary residential care to Hatch, with substantial residential time for McDole. In its written decree, the court expressly ordered that Hatch cease attempts to alienate her son James, born in a prior marriage, from McDole, finding that such conduct was poisoning McDole's relationship with Joseph. Supplemental Clerk's Papers, at 13 (filed Sept. 12, 1991). While not incorporated in the decree, the court orally enjoined both parties from removing Joseph from Walla Walla without the court's permission. Moreover, the court warned the parties that it was concerned about their conflict over the residential care of Joseph and that if "activities continue which the Court would find ... detrimental to the child's best interests, that includes this conflict and attempts of alienating and what have you, no matter which way it is, that the Court would find those grounds to change the residential time because that's not in the child's best interests." Supplemental Clerk's Papers, at 67 (filed Sept. 12, 1991).
In December 1988, McDole filed a motion seeking visitation, complaining that Hatch was making it difficult for him to see his stepson James. The court appointed a mediator in March, but the mediation effort failed when Hatch chose to withdraw from the proceedings. McDole then sought a show cause order, alleging that Hatch was interfering with his ability to see James and was attempting to alienate the boy *606 from him. After a June 1989 hearing, the court ordered that McDole have visitation with James every other Saturday.
In early 1990, McDole heard rumors that Hatch was planning to move to Utah to remarry. Hatch repeatedly denied that she had such plans. Nonetheless, on March 9, 1990, Hatch left the state with Joseph and James without informing McDole. She moved to Utah to marry a chiropractor, Lance Hatch. McDole learned of the move in a letter from Hatch's attorney. The letter proposed a visitation schedule that would have permitted McDole "liberal" visitation when Joseph was not in school, when Hatch had planned no other activities, and when Hatch agreed that the visit would not be disruptive to Joseph's "routine life" and was not inconvenient to the Hatches. McDole did not accept this proposal. Instead, he filed a motion to modify the dissolution decree to designate him as the primary residential parent for Joseph. McDole sought and obtained a show cause order which set a hearing for March 23, 1990, for Hatch to show why Joseph should not be temporarily placed with McDole. The court also ordered that Hatch immediately disclose her new address and telephone number to her counsel or the court to be passed on to McDole.
On March 19, 1990, Hatch, through counsel, moved for a continuance of the show cause hearing, claiming that she was unable to return to Walla Walla on such short notice. McDole complained that he still had not received a telephone number where he could reach Joseph. The court denied the requested continuance because Hatch had not complied with the order to disclose her address and telephone number. The court said it would not reconsider the continuance until "there's a phone number where this child can be reached." Report of Proceedings, at 5.
McDole was given a telephone number on March 20 and was able to talk to Joseph briefly that night.[1] On March 23, Hatch's counsel renewed the motion for a continuance. Counsel *607 could not, however, give the judge a firm date when Hatch would be in Walla Walla. Observing that "[t]his is too much messing around", Report of Proceedings, at 17, the court entered an order awarding McDole temporary residential care of Joseph. Hatch then returned Joseph to McDole on March 31.
The hearing on McDole's petition to permanently modify the residential placement provision of the dissolution decree began in May. Hatch moved to dismiss the petition as failing to allege a harmful change of circumstances. The court heard testimony from Lance Hatch, Cynthia Hatch, James McDole, family therapist Richard Garcia, and several others. Lance Hatch explained the circumstances of his marriage to Cynthia Hatch. He professed his willingness to work with McDole to set up an acceptable visitation schedule and said he believed it was important that McDole maintain his relationship with Joseph. Hatch acknowledged, however, that he had attempted to limit McDole's telephone calls to Utah.
Cynthia Hatch testified that she did not want McDole to see her other son James. She indicated that she would not prevent visitation, however. She explained that she did not tell McDole about the planned move to Utah because she feared that McDole would interfere. She was convinced that McDole had been monitoring her activities and she said she felt harassed. She maintained that when McDole asked if she was leaving she and Lance had not yet set a wedding date and that her denial was truthful when given. She said that after the move she had not attempted to prevent McDole from talking with Joseph. Rather, she and Lance were busy the first week traveling around the state. She said she believed McDole's relationship with Joseph was important and that it should continue, but that it was better for Joseph to live with her in Utah.
Richard Garcia, a family therapist and marriage counselor who is the director of the Catholic Children and Family Services in Walla Walla, testified by deposition. Garcia had previous experience with the family and had testified in the dissolution *608 proceedings. He had seen Joseph twice since McDole was awarded temporary residential care. Garcia said that he believed Joseph was more attached to his father than to his mother. Moreover, he believed that Hatch's move to Utah "left Joey at risk to develop depressive and severe emotional problems which would come out later in life." Supplemental Clerk's Papers, at 104 (filed Sept. 12, 1991). Garcia said that since the dissolution Hatch had displayed an inconsistent pattern with respect to visitation exchanges in Walla Walla. He understood that when McDole returned Joseph from visitation, Hatch often was not there to meet him. She made arrangements for others to take him or delayed the end of visitation to fit her own schedule. This "ha[d] left [Joseph] without an experience of comfortable predictable times to be with his mother". Supplemental Clerk's Papers, at 104 (filed Sept. 12, 1991).
With respect to the move to Utah, Garcia said that his greatest concern was Hatch's failure to inform McDole so that McDole could talk with Joseph and provide some reassurance about the move. Garcia said that Hatch had "essentially deprived [Joseph] of his father by the nature of her move in the same way that the child would be deprived of his father if that father died or was killed suddenly." Supplemental Clerk's Papers, at 105 (filed Sept. 12, 1991).
At the conclusion of the hearing, the trial court granted the motion to modify and designated McDole as Joseph's primary residential parent. The court said it had considered the circumstances of the significant people in Joseph's life and the detrimental or beneficial effect of maintaining or changing those relationships. The court noted that Joseph had met his new stepfather on only one occasion before the move to Utah, that the move had been accomplished without notice to McDole, and that McDole had not been able to talk to Joseph for more than 10 days. The court concluded that there had been a substantial change in circumstances, that the change was detrimental to Joseph's emotional health, and that the likely harm caused by the move outweighed the *609 advantages of the move for Joseph. The court said that Hatch was extremely resistive "to this business of visitation and continuing [the father-child] relationship. It's been clouded with accusations and counteraccusations, but ... at the bottom,... she is desirous and will take actions that will limit the child's contact with the father to the extent that I think I would find the environment is detrimental to the child." Report of Proceedings, at 259. The court's written findings and conclusions essentially mirrored its oral decision.
In reaching its decision, the trial court relied on former RCW 26.09.260(1)(c), which has been in effect without substantial change since 1973 and is now codified in RCW 26.09.260(2)(c). This provision authorizes a change in residential placement if:
The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child[.]
On this basis, the trial court found that there had been a substantial change in the child's circumstances and that modification was necessary to serve the child's best interests. See RCW 26.09.260(1).
The Court of Appeals initially found that a trial court shall not modify a prior parenting plan unless it finds (1) a substantial change has occurred in the child's circumstances and (2) modification is necessary to serve the best interests of the child. In applying these standards, the court shall not modify the prior decree unless it finds (3) the child's present environment is detrimental to the child's physical, mental or emotional health; and (4) the harm likely to be caused by a change of environment is outweighed by the advantage of the change to the child. In re Marriage of McDole, 67 Wn. App. 884, 888, 841 P.2d 770 (1992) (citing former RCW 26.09.260(1); Anderson v. Anderson, 14 Wn. App. 366, 368, 541 P.2d 996 (1975), review denied, 86 Wn.2d 1009 (1976)).
Turning to the facts in this case, the Court of Appeals found that the evidence did not support a finding that Joseph's circumstances *610 had substantially changed since the dissolution. Instead, it concluded, the trial judge erroneously changed residential placement to punish Hatch for perceived wrongful conduct. See Schuster v. Schuster, 90 Wn.2d 626, 630, 585 P.2d 130 (1978); Thompson v. Thompson, 56 Wn.2d 244, 250, 352 P.2d 179 (1960); In re Marriage of Murphy, 48 Wn. App. 196, 200, 737 P.2d 1319 (1987).
[1, 2] Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification. See In re Marriage of Stern, 57 Wn. App. 707, 712, 789 P.2d 807, review denied, 115 Wn.2d 1013 (1990); Anderson v. Anderson, 14 Wn. App. 366, 541 P.2d 996 (1975), review denied, 86 Wn.2d 1009 (1976). Nonetheless, trial courts are given broad discretion in matters dealing with the welfare of children. In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); In re Marriage of Cabalquinto, 100 Wn.2d 325, 327-28, 330, 669 P.2d 886 (1983). A trial court's decision will not be reversed on appeal unless the court exercised its discretion in an untenable or manifestly unreasonable way. Cabalquinto, at 330; In re Marriage of Griffin, 114 Wn.2d 772, 779, 791 P.2d 519 (1990); In re Marriage of Timmons, 94 Wn.2d 594, 600, 603-04, 617 P.2d 1032 (1980); George v. Helliar, 62 Wn. App. 378, 385, 814 P.2d 238 (1991); Chapman v. Perera, 41 Wn. App. 444, 446, 704 P.2d 1224, review denied, 104 Wn.2d 1020 (1985). Moreover, a trial court's findings will be upheld if they are supported by substantial evidence. See Chapman, at 449.
On the record before us we find that the Court of Appeals substituted its judgment for that of the trial court. Here, the trial court had presided over this case since the parties' dissolution. Before ordering a change of residential placement the court took testimony from the parties and considered expert testimony. The court was entitled to find from the evidence that Hatch had obstructed McDole's visitation rights from the beginning, and left the state with Joseph after denying that she was leaving. The court was also aware that Hatch had been slow to comply with the court's orders. *611 The court had warned the parties that it would find continued conflict detrimental to the child's best interests. A therapist and counselor experienced with the family testified that Hatch's behavior was harmful to Joseph. The trial court reasonably concluded that Hatch would continue this disruptive and harmful conduct in the future. The court thus did not abuse its discretion when it held that there had been a substantial change in circumstances, that the child's environment was detrimental to his mental health, and that a placement modification was necessary to serve the child's best interests.
The Court of Appeals is reversed and the trial court's order modifying residential placement is reinstated.[2] ANDERSEN, C.J. (dissenting)
I agree with the majority's per curiam opinion that trial courts are generally given broad discretion in matters concerning the welfare of children. In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993) (initial placement of a child); In re Marriage of Cabalquinto, 100 Wn.2d 325, 327-28, 669 P.2d 886 (1983) (modification of visitation order); In re Marriage of Griffin, 114 Wn.2d 772, 791 P.2d 519 (1990) (modification of child support order).
However, in proceedings to modify a child's residential placement, that discretion is more limited and must be exercised with caution and within the bounds of established legal principles. In my view, the trial court's ruling in the present case did not satisfy the standard set forth in the modification statute, RCW 26.09.260. I would thus affirm the Court of Appeals. My reasons are as follows.
First, statutes and case law have established a strong presumption against placement modifications because changes in residential placement are highly disruptive to children. See RCW 26.09.002 (defining "best interest of the child"); RCW 26.09.260 (establishing the standard for modification); *612 RCW 26.09.270 (providing that a modification action may not even be pursued unless the trial court initially finds "adequate cause" to proceed with the action); In re Marriage of Roorda, 25 Wn. App. 849, 851, 611 P.2d 794 (1980); George v. Helliar, 62 Wn. App. 378, 814 P.2d 238 (1991).
Second, the standard for modification requires the court to find "upon the basis of facts that have arisen since" the parenting plan was entered "or that were unknown to the court at the time" the parenting plan was entered (1) that a substantial change has occurred in the circumstances of the child or the nonmoving party and (2) that the modification is in the best interest of the child and is necessary to serve the best interest of the child. RCW 26.09.260(1). Furthermore,
(2) In applying these standards, the court shall retain the residential schedule established by the .. . parenting plan unless:
...
(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child ...
(Italics mine.) RCW 26.09.260(2)(c).[3]
The standard is a difficult one to prove, as it should be.
In the present case, I believe the Court of Appeals correctly held that substantial evidence did not support a finding, *613 based upon facts unknown to the trial court at the time the parenting plan was entered or that had arisen since that plan was entered, that a substantial change of circumstances had occurred. Most of the facts pointed to by the trial court, and by the per curiam opinion, were either known to the trial court when it entered its initial order on residential placement, or do not support a finding that there had been a substantial change in the circumstances of the child or the mother.
I agree with the Court of Appeals that change in the residential placement of a child cannot be used to punish a parent for wrongful conduct, as the controlling consideration in such a decision must be the best interests of the child. In re Marriage of McDole, 67 Wn. App. 884, 889, 841 P.2d 770 (1992). To my view the best interests of Joey McDole, the child in this case, was not the paramount consideration of the trial court in modifying the residential provisions of the parenting plan.
Accordingly, I dissent.
Reconsideration denied December 2, 1993.
NOTES
[1] Despite repeated attempts, McDole was able to talk to Joseph in Utah on only one other occasion.
[2] McDole appears to contend that he is entitled to a reasonable attorney fee award. McDole fails to cite any legal authority for this request or explain why he is entitled to attorney fees. Therefore, his request is denied.
[3] The modification statute was rewritten by the Parenting Act of 1987, Laws of 1987, ch. 460, § 19; amended in 1989, Laws of 1989, ch. 318, § 3, Laws of 1989, ch. 375, § 14; and in 1991, Laws of 1991, ch. 367, § 9. The substance of the pertinent provisions, subsections (1) and (2)(c), has not changed, although the numbering of the statutory sections has changed.

Subsection (2)(d) (formerly subsection (1)(d)) sets forth the standard to be applied in cases where one parent interferes with the other parent's residential time with the child. That subsection requires the residential placement to be retained unless:
The court has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions in the court-ordered parenting plan, or the parent has been convicted of custodial interference in the first or second degree under RCW 9A.40.060 or 9A.40.070.
Although this subsection appears to be applicable to the allegations raised by Mr. McDole's petition, this portion of the statute was not relied on by the parties or the trial judge.