2016 AUG -8 AM 50

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parenting of<br>A.C. | ) )<br>) | No. 73897-6-I |
| MISTY RAE CURRY, | )<br>) | DIVISION ONE |
| Respondent, | )<br>) | UNPUBLISHED OPINION |
| v. | )<br>)<br>) | |
| CHANDLER HAAKON CLOUGH, | ) | |
| Appellant. | | FILED: August 8, 2016 |

APPELWICK, J. — Clough challenges the parenting plan that provides for the care of his daughter. He primarily argues that the evidence does not support the court's finding of domestic violence that underlies restrictions imposed on his residential time. Because substantial evidence supports the court's finding of a history of acts of domestic violence and the other challenges Clough raises are without merit, the court did not abuse its discretion by imposing restrictions in the parenting plan. We affirm.

## FACTS

Chandler Clough and Misty Curry are the parents of a daughter, A.C., who was two years old at the time of trial. When A.C. was born, Curry lived in

Washington and Clough lived in California. Just after A.C.'s second birthday, Cough relocated to Washington in order to be more involved in his daughter's life.

Curry filed a petition to establish a parenting plan and child support order. The court held a four day hearing. The parties represented themselves. The trial court heard the testimony of both parties and eight witnesses, who were primarily family members.

At the conclusion of the hearing, the court entered a parenting plan that included restrictions on Clough's residential time after finding both a history of acts of domestic violence and an abusive use of conflict. The plan provides for Clough's residential time to be supervised initially and for gradually increasing residential time with Clough conditioned upon his compliance with various requirements. In addition, the parenting plan requires Clough to undergo a mental health assessment and to obtain recommended treatment, and to participate in domestic violence treatment. Clough appeals.

## RESTRICTIONS IN PARENTING PLAN

The restrictions imposed by the court in the parenting plan are based on the following finding as to Clough:

> A history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm.

Clough contends that the evidence does not demonstrate a "pattern of conduct constituting domestic violence."

2

A trial court has broad discretion when crafting a parenting plan, and we review its decision for an abuse of discretion. In re Marriage of Caven, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). This court defers to the "trial judge's advantage in having the witnesses before him or her, which is particularly important in proceedings affecting the parent and child relationship." In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). We do "not decide the credibility of witnesses or weigh the evidence" on appeal. Id.

When fashioning a parenting plan, the court's discretion must be guided by several statutory provisions, including RCW 26.09.191, which sets forth factors that require or permit limitations on a parent's involvement with the child. In re Marriage of Katare, 175 Wn.2d 23, 35-36, 283 P.3d 546 (2012). RCW 26.09.191(1) and (2) are mandatory provisions that require the trial court to restrict a parent's time with his or her child and prohibit mutual decision-making if the court finds that a parent has engaged in a "history of acts of domestic violence" or an assault that "causes grievous bodily harm or the fear of such harm." "Domestic violence," as defined in RCW 26.50.010(3), means

> (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

Although "a history of acts of domestic violence" is not specifically defined, legislative history indicates that the phrase "was intended to exclude 'isolated, de minimus incidents which could technically be defined as domestic violence.' " In

re Marriage of C.M.C., 87 Wn. App. 84, 88, 940 P.2d 669 (1997) (quoting 1987 Proposed Parenting Act, Replacing the Concept of Child Custody, Commentary and Text 29 (1987)), aff'd sub nom., Caven, 136 Wn.2d 800. And, "[m]ere accusations, without proof, are not sufficient to invoke the restrictions under the statute." Caven, 136 Wn.2d at 809.

We will uphold the trial court's findings if substantial evidence supports them. In re the Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Substantial evidence consists of "evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). More specifically, "[s]ubstantial evidence exists so long as a rational trier of fact could find the necessary facts were shown by a preponderance of the evidence." A.W., 182 Wn.2d at 711.

Clough maintains that there was no evidence of domestic violence that took place after he moved to Washington.[1] While he concedes that Curry provided sworn testimony that he engaged in domestic violence both before and after the child was born, Clough points out that his testimony contradicted Curry's. He also notes that Curry did not present police reports or medical treatment records to substantiate her claims. Clough suggests that the court was influenced by gender bias and ignored evidence of Curry's role in the conflict.

However, the court expressly found that Curry's testimony about the domestic violence was credible. Curry described her relationship with Clough as

---

[1] The record is unclear as to exactly when Clough moved to Washington, but it appears to have been within a year of the July 2015 trial.

"abusive." Curry testified about a specific violent incident that occurred when she and Clough lived together in California and she was pregnant with A.C. Curry said that while she and Clough were fighting, he put his hand over her mouth and then grabbed her cell phone and held it away from her. In response, she put her forearm on Clough's chest and face. He then placed his hand on her neck and choked her. Curry began to cry. Clough yelled at her for a few minutes, and then left for the rest of the night. The next day, Curry packed her belongings so she could return to Washington. Clough disconnected the battery of Curry's vehicle so she could not leave, forcing her to call the police for assistance.

Curry also testified that during a visit with Clough in California when A.C. was about a year old, she and Clough had a "physical altercation" and fought over the baby. Clough forcefully took A.C. from Curry during an argument and went into the bathroom, purportedly to calm A.C. down. Curry tried to take A.C. back from him, and then propped her foot in front of the bathroom door to prevent Clough from closing the door. Curry said that Clough "ended up kicking [her]" and shut the door. Curry testified that on the following night during the same visit, she and Clough had another argument and Clough threw a pizza on the bed where she was sitting with A.C. After these incidents, Curry said she no longer "felt safe" taking A.C. to California to visit Clough.

Curry's mother's testified about an incident at some point during the parties' relationship when Clough blocked her car on a four lane road. Clough approached Curry's mother's car and grabbed Curry's arm. When Curry's mother demanded that he release her or she would call the police, Clough yelled

at Curry and her mother in an offensive manner. The court described Clough's behavior as generally controlling, aggressive, and manipulative. The court also observed that Clough's reactions were disproportionately angry, particularly when confronted with matters beyond his control, such as the presence of a new boyfriend in Curry's household.

Clough's arguments rely on his own subjective interpretation of the evidence and assessments of witness credibility. But, "[t]he fact that the evidence may be subject to different interpretations does not authorize this court to substitute its findings for those of the trial court." Peter L. Redburn, Inc. v. Alaska Airlines, Inc., 20 Wn. App. 315, 318, 579 P.2d 1354 (1978). As this court does not reweigh evidence or review witness credibility, his arguments are unpersuasive.

Alternatively, Clough suggests that the limitations in the parenting plan are unwarranted, because they were not contemplated or proposed by the parties. Curry sought only a minor adjustment of the midweek residential schedule and did not request limitations based on domestic violence or for any other reason. Therefore, Clough contends that the court was not authorized to restrict his residential time. No authority supports this argument. Although the parents may propose parenting plan provisions, the court is bound only by the provisions of the Parenting Act of 1987, ch. 26.09 RCW, including the objectives stated in RCW 29.09.184 and the considerations set forth in RCW 29.09.187.

Finally, Clough asserts that he was entitled to a jury determination by clear and convincing evidence on the issue of domestic violence. But, trial by jury is

6

dispensed with in proceedings under chapter 26.09 RCW. <u>See</u> RCW 26.09.010(1). And, the standard of proof in a civil case is preponderance of the evidence. <u>See</u> <u>In re Mental Illness of Levias</u>, 83 Wn.2d 253, 255, 517 P.2d 588 (1973), <u>overruled on other grounds by</u> <u>In re McLaughlin</u>, 100 Wn.2d 832, 676 P.2d 444 (1984) ("Traditionally, unless otherwise provided by statute or case law, the standard of proof used in the trial of civil matters has been a preponderance of the evidence."). Citing <u>Santosky v. Kramer</u>, 455 U.S. 745, 756, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), Clough argues that because the parenting plan suspended his residential time until he met certain conditions, the evidentiary standard should be the same as that required to terminate parental rights. But, a temporary suspension of residential time is not commensurate with a termination of parental rights. Clough offers no meaningful argument or authority to support the position that this type of parenting plan provision raises constitutional issues.

We affirm.

_Appelwick, J._

WE CONCUR:

_Leach, J._          _Dwyer, J._

7