

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 36151-9-III |
| | ) | |
| MEGAN C. DOMPIER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| SEAN D. PARKER, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Sean Parker appeals a modification to the original parenting plan for his and Megan Dompier's children that was agreed when the parties divorced in 2010. He challenges the trial court's findings that he "voluntarily" consented to the integration of the children into Ms. Dompier's home and that granting the modification requested by Ms. Dompier was in the children's best interests. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Sean Parker and then-Megan Parker, now Megan Dompier, were divorced in Utah in February 2010, following 11 years of marriage. They have four children. At the time of the divorce, their son was nine years old and their daughters were ages eight, six, and two. Their divorce decree included an agreed parenting plan that gave them joint "legal

custody" and Mr. Parker sole "physical custody" of the children.  Clerk's Papers (CP) at 13.  The parenting plan said that the parties were to agree on a visitation schedule, but included default schedules if they could not.  If the parties lived in the same state and within 150 miles of each other, the minimum parenting time for the "non-custodial parent," Ms. Parker, was Monday evening until Friday evening.  CP at 15.  If the parties lived in different states or more than 150 miles from each other and could not reach another agreement, the children would live with Mr. Parker and Ms. Parker would have rotating visitation on holiday breaks, half the summer every year, and, at her option and expense, one weekend per month.

Three months after the divorce was finalized, Ms. Parker and the parties' youngest daughter moved to Spokane, while the other three children stayed with Mr. Parker in Utah.  Two months later, the parties' two other daughters joined Ms. Parker in Spokane.  Their son remained with his father until August 2010, when he moved to his grandparents' home in Utah; in November 2010, he joined his mother and sisters in Spokane.  In December 2010, Ms. Parker married Phillip Dompier.

After all of the children moved to Spokane, Mr. Parker looked for work there, but was not able to find a job.  At the beginning of 2011, Mr. Parker transferred to a position offered by his employer in Helena, Montana, to be closer to the children.  For three and a half years, he traveled from Helena to Spokane to spend time with the children as often as he could.  In 2014, Mr. Parker started to again look for employment in Spokane and

2

accepted a position that was a demotion, paid less, and required him to be on call—again, to be closer to the children. Given his inconsistent schedule, his visitation with the children was sporadic. Finally, in June 2015, Mr. Parker was offered a supervisory position in Spokane with his previous employer, which gave him a more consistent schedule. In July 2016, Mr. Parker remarried.

Toward the end of 2016, the parties became less able to agree about the visitation schedule. It was Mr. Parker's view that if they could not agree, they were obliged to revert to the 2010 "live within 150 mile" default plan, under which the children would reside with him every weekend, from Friday night until Monday evening. This was a marked change from the schedule they had been following, so in January 2017, Ms. Dompier petitioned to change the parenting plan, alleging that the children had been living in her home with Mr. Parker's permission in substantial deviation from the Utah custody order. Her proposed parenting plan would have the children living with her and visiting Mr. Parker on the first, third, and fifth weekends from Friday evening until Sunday evening, which she represented was similar to the schedule they had been following by agreement.

In responding to the petition, Mr. Parker agreed that the parenting plan needed to be updated because it was confusing, but he contended that the plan proposed by Ms. Dompier was not in the best interests of the children.

The superior court found adequate cause to proceed to a trial and entered a temporary order that gave Mr. Parker visitation on the first, third and fifth weekends of each month, as well as midweek visitation on Tuesday evenings (later changed to Wednesday). It also provided for one Tuesday (later Wednesday) overnight a month, and addressed holidays and vacations.

The petition to modify the parenting plan proceeded to trial a year later. Both parents and both stepparents testified at the trial. Ms. Dompier testified that from 2014 to 2016, she and Mr. Parker did not have any major disagreements about visitation. She offered a summary she had prepared of Mr. Parker's visits with the children by reviewing her calendars and text messages, which had some gaps where her records proved incomplete. According to her summary, between October 2014 and February 2017, Mr. Parker had an average of 5.8 overnight visits per month. He averaged 1 overnight per month in 2014, 5.2 per month in 2015, 7.56 per month in 2016, and 7 per month in the first two months of 2017.

Mr. Parker agreed that the summary Ms. Dompier prepared was "ballpark" correct, although he thought he had the children a lot during the gaps in the summary. Report of Proceedings at 213. He testified that the overnights he got under the temporary order were not enough time to maintain his relationship with his children and that he wanted to talk to them after school, hear about their days and what they were struggling

with, and help with their homework. He testified that he enjoyed doing those things on his weekends, but wanted and needed to be a bigger part of their lives.

At the conclusion of the evidence, the trial court took the petition under advisement and issued a memorandum decision a week later. It found that the children were integrated into Ms. Dompier's home with Mr. Parker's consent and that modification of the parenting plan was appropriate. Turning to the best interests of the children, the court's decision reviewed the statutory factors provided by RCW 26.09.187(3). Addressing the residential schedule, the court's decision stated:

> Both the mother and the father are good parents, as are both of the stepparents. There is no basis for any limitation.
>
> The father has never exercised the amount of residential time he was allowed under the Utah Decree, or that he proposes under either of his Plans. The Court has no doubt that the father is sincere about wanting to spend more time with his children, and to be more involved in their daily lives and all of their activities, and he should be, but to drastically change the routine of the last seven years would be detrimental to the children. The children are familiar with this routine and doing well.
>
> The mother will be the primary custodian. The father will have every other weekend, from Friday after school to Sunday at 7:30 p.m.; the Court would consider having the children with the father until school on Monday, but with his early work hours he will not be available on Monday mornings to be with the children before school.
>
> The father will have every Wednesday overnight, from after school to return to school Thursday morning.

CP at 105. The decision went on to address visitation on holidays and school breaks. A final order was entered that essentially tracked the ruling above, although it provided more detail to the parenting plan.

Mr. Parker appeals.

ANALYSIS

Washington statutes generally provide that trial courts are not to modify a prior custody decree or a parenting plan unless the trial court "finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that *a substantial change has occurred in the circumstances of the child or the nonmoving party* and that *the modification is in the best interest of the child and is necessary to serve the best interests of the child*." RCW 26.09.260(1) (emphasis added). The statute provides that one changed circumstance that justifies a trial court in modifying a residential schedule established by a decree or parenting plan is "[t]he child['s] . . . integra[tion] into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan." RCW 26.09.260(2)(b).

Mr. Parker assigns error to the trial court's determinations that he consented to his children's integration into Ms. Dompier's family. He also assigns error to the trial court's finding that granting the modification requested by Ms. Dompier was in the best interests of the children and necessary to serve their best interests.

We review Mr. Parker's challenges to the trial court's findings in the order presented.

6

I.      SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT MR. PARKER CONSENTED TO INTEGRATION OF THE CHILDREN INTO MS. DOMPIER'S HOME

Mr. Parker argues that he did not consent to his children's integration into Ms. Dompier's home.

The Washington Supreme Court has explained what constitutes integration with consent:

> "Consent" refers to a voluntary acquiescence to surrender of legal custody. It may be shown by evidence of the relinquishing parent's intent, or by the creation of an expectation in the other parent and in the children that a change in physical custody would be permanent. The children's views as to where "home" is, and whether the environment established at each parent's residence is permanent or temporary are significant in determining whether "consent" and "integration" are shown. While time spent with each parent is not determinative, it is a factor.

*In re Marriage of Timmons*, 94 Wn.2d 594, 601, 617 P.2d 1032 (1980).

Washington cases hold that consenting to a child living with their other parent on a *temporary* basis does not support a finding of voluntary integration. *See, e.g.*, *id.* ("serious question" as to integration where children resided with father for three months while mother had financial problems and continued living there for five months after mother asked for them to live with her to avoid changing schools in the middle of the year); *In re Marriage of Taddeo-Smith*, 127 Wn. App. 400, 405, 110 P.3d 1192 (2005) (no consent to integration where father took care of children for three weeks after mother was in a serious accident and was unable to care for them); *In re Marriage of Thompson*,

32 Wn. App. 418, 421, 647 P.2d 1049 (1982) (five months with noncustodial father did not constitute integration with consent because both parents intended for it to be temporary and the child did not consider his father's house to be his home).

Mr. Parker argues that his acquiescence to the children moving to Spokane and living primarily in the Dompier household was never with an "expectation of permanency" because "[t]he agreement was that Mr. Parker would find a job in Spokane to be with the children" and "although this took 5 years to do[,] this was because of the job market and the unavailability of openings." Appellant's Opening Br. at 14. He argues that the trial court "fail[ed] to take into account the lengths [he] went to in order to provide for his children and his attempts to spend all residential time possible with them." *Id.* at 16.

Trial courts are given broad discretion in matters dealing with the welfare of children. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A trial court's decision will not be reversed on appeal unless the court exercised its discretion in an untenable or manifestly unreasonable way. *Id.* A trial court's findings will be upheld if they are supported by substantial evidence. *Id.* Unchallenged factual findings are verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

In its memorandum decision, the trial court recounted the history of the parents' residence and pattern of visitation from 2010 through the time of the 2017 temporary

order and then stated, without elaboration, that "[t]he children have been integrated into the mother's home with the consent of the father and modification is appropriate." CP at 103. Elaboration was not needed. As explained by *Timmons*, consent *may* be shown by evidence of the relinquishing parent's intent, but it may also be shown by the creation of an expectation in the other parent and in the children. Moreover, "whether the environment established at each parent's residence is permanent or temporary are significant." 94 Wn.2d at 601. The focus of this last, significant, consideration is not on the relinquishing parent's belief, it is about the permanent or temporary nature of the environment that is actually established in the two households. By the time of the 2017 temporary order, the children's primary residence for over six years had been the Dompier home. Substantial evidence supports the trial court's determination.

II. UNCHALLENGED FINDINGS SUPPORT THE TRIAL COURT'S ULTIMATE FINDING THAT A CHANGE IN THE PARENTING PLAN WAS IN THE CHILDREN'S BEST INTERESTS

The trial court's final order includes its findings on the following factors that RCW 26.09.187(3)(a) directs trial courts to consider in making residential provisions for children:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

        (iv) The emotional needs and developmental level of the child;
        (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
        (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
        (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.
        Factor (i) shall be given the greatest weight.

Mr. Parker does not assign error to any of the findings in the manner required by RAP 10.3(g). Textually, his only challenge to the sufficiency of evidence to support a finding is a challenge to what he characterizes as "the Court's finding that increasing the children's time with Mr. Parker would negatively affect their well-being." Appellant's Opening Br. at 17. The court made no such finding, however. It only found, in addressing factor (vi) (the wishes of the parents) that *the mother* testified that a change as proposed by Mr. Parker would be a major change that would negatively impact the children's well-being.

Mr. Parker otherwise argues that the trial court's finding that Mr. Parker should be able to be more involved in parenting functions will be unworkable if Ms. Dompier holds him to the visitation schedule. But the finding at issue did not deal with visitation time, it dealt with the father's opportunity to "mak[e] arrangements for and attend[ ] medical appointments, school functions, and extracurricular activities." CP at 143. The father does not explain why his ability to make such arrangements and attend such events would

require additional visitation time. The parenting plan provides that parent with whom a child is not residing at the time is not limited from attending activities and events unless his or her attendance would be disruptive or is restrained.

The trial court's parenting plan also gave Mr. Parker more parenting time than he previously exercised. Mr. Parker argues that the new residential schedule allows him an average of 8 overnights per month, but that is actually the minimum number of overnights per month.

Substantial evidence supports the trial court's findings that modification is in the children's best interests.

III.     ATTORNEY FEES AND COSTS

Mrs. Dompier requests an award of reasonable attorney fees for what she contends is a bad faith appeal under RCW 26.09.260(13) and RAP 18.9(a). Alternatively, she requests an award of fees under RCW 26.09.140 if she is the substantially prevailing party. Under RAP 18.1(a), a party may recover attorney fees on appeal if authorized by applicable law.

Under RCW 26.09.260(13) a court shall award fees and courts costs if a motion to modify a prior decree or parenting plan has been brought in bad faith. Mr. Parker did not file the motion to modify, Ms. Dompier did.

RAP 18.9(a) gives this court discretion to order a party or counsel who files a frivolous appeal to pay terms or compensatory damages. An appeal is frivolous if the

court is convinced that it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). A civil appellant has a right to appeal under RAP 2.2, and all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. *See Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980). We do not find Mr. Parker's appeal to be frivolous.

Under RCW 26.09.140, this court "may, in its discretion" order a party to pay the other party's attorney fees. We decline to award attorney fees to Ms. Dompier. As the substantially prevailing party on review, she may request costs. *See* RAP 14.2, 14.4.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

12