[No. 36539.   Department One.   May 2, 1963.]

J. KENNETH CHRISTOPHER, *Appellant*, v. RACHEL B. CHRISTOPHER, *Respondent.**

* Reported in 381 P. (2d) 115.

*Edward P. Ferris,* for appellant.

*R. W. Gibson* (of *Gibson & Palmer*), for respondent.

HALE, J.—This case involves the question of sufficiency of the evidence arising from a private interview with children by the court at chambers where no record was preserved.

Rachel B. Christopher, respondent, was awarded a divorce from appellant, J. Kenneth Christopher, on June 21, 1961. She was granted care, custody and control of their two minor children, then aged 11 and 8. The father was specifically allowed to visit his children at all reasonable times and places, to have them in his home one weekend each month and on certain holidays, and to have them exclusively for the entire month of July. While we do not have the court's findings and conclusions in the divorce case before us, we assume that the court held the father to be fit and proper company for his children in view of the extensive visitation rights.

Crucial to the case at bar was a provision in the divorce decree which expressly forbade respondent to remove the children from the state of Washington for more than 30 days, or permanently.

Less than 2 months after the entry of the divorce decree, respondent, while residing at Forks, Washington, with the two children, verified a petition to modify the decree of divorce to allow the permanent removal of the children from the state of Washington to Salt Lake City, Utah. Appellant father answered, and brought a cross petition for modification, asking that he be awarded the permanent custody and the care of the children. Both the original divorce proceedings and the case at bar were heard by the same trial judge.

Probably none of the work of the trial judge so taxes his emotional energies and places so great a strain on his conscience as do cases involving custody of and visitation with children, and this is particularly true in districts where the same judge is apt to hear the same parties air their marital problems before him over and over again. In the light of what occurred at the modification trial, we fully understand the high purpose of the trial court in attempting to solve what may well turn out to be an insoluble problem.

The statement of facts clearly indicates that the parties and the court intended to first hear and determine respondent's petition to move the children permanently to Utah, and to thereafter proceed to try the matter of change in custody raised by the cross petition. This is borne out by the following colloquy which occurred early in the hearing of the wife's petition:

"Mr. GIBSON [respondent's attorney]: . . . Right now we are considering whether or not she should be permitted to take the children out of the State of Washington, and I think that the cross examination should be limited to that. We are getting into matters now that are not material to the problem at hand. THE COURT: Yes. This Court does not wish to go into any difficulty the mother and father may be having in this matter. I am simply interested in the removal or non-removal of these children from the State of Washington. The other matters are not before me. MR.

FERRIS [appellant's attorney]: Well, the other matters are before Your Honor on our Petition to change the custody back. However, at this time, undoubtedly, we are going into that. There is a cross petition. THE COURT: Oh, there is a cross petition? I didn't know that. MR. FERRIS: There is a cross petition, yes, Your Honor. THE COURT: Did you know that, counsel? MR. GIBSON: I am aware of the cross petition. However, it was my understanding we should limit this to my petition . . . In other words, at this time we are limited to the matter of the modification of the decree with respect to taking the children out of the State of Washington. THE COURT: I think we had better proceed that way, Mr. Ferris. MR. FERRIS: That will be fine, Your Honor. THE COURT: You may proceed with questioning only on the removal from the State."

After hearing evidence presented by the respondent, the court dismissed respondent's petition to remove the children to Salt Lake City, Utah, in the following ruling:

"You may step down, Mrs. Christopher. The granting of this motion would be for the convenience of Mrs. Christopher. The granting of this motion would be at such far distance between the children and the father it would, in effect, in this Court's opinion, deprive the father of his rights of visitation, and this the Court will not do. The motion to take the children out of the State is denied."

■ Our study of the evidence shows that the trial judge acted well within his discretionary powers in denying the petition. A decree of divorce should not be modified as to provisions affecting custody—and removal from the state is such a provision where visitation rights in one parent would be substantially impaired or nullified—unless and until there is shown to be a material change in conditions both affecting and promoting the child's welfare. *Cumbie v. Cumbie,* 61 Wn. (2d) 669, 379 P. (2d) 918; *Stringfellow v. Stringfellow,* 56 Wn. (2d) 957, 350 P. (2d) 1003, 353 P. (2d) 671; *Applegate v. Applegate,* 53 Wn. (2d) 635, 335 P. (2d) 595; *Munroe v. Munroe,* 49 Wn. (2d) 453, 302 P. (2d) 961; *Henson v. Henson,* 47 Wn. (2d) 866, 289 P. (2d) 1034.

■ Nor would we either disturb the court's evaluation of the evidence upon which it ruled that the petition to

remove the children from the state was denied, or overturn the court's discretion in making the ruling. Suffice it to say that, at that juncture of the trial, there was no substantial evidence to support the wife's removal petition. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183, and cases cited.

Even if all of the evidence is regarded in the light most favorable to the petitioner and petitioner is accorded all favorable inferences to be derived therefrom, the facts here simply do not support the petition.

With the oral order denying respondent's petition to remove the children to Utah, the court then proceeded to hear the father's cross petition for a change in custody. It is apparent that both the parties and the court assumed that the petition for removal of the children had been laid to rest as an issue in the case and that the further hearing would be limited to matters affecting a change of custody in the father as pleaded in his cross petition. During the direct examination of the cross-petitioning father, several letters written by the children to their father, expressing dislike of their mother and a desire to live with the father, were admitted in evidence. It is quite clear from the record that these letters had no bearing whatever on the removal of the children to Utah from Forks, Washington, but were submitted by the appellant solely in support of his cross petition for a change in custody. Early in cross-petitioner's case when he was on direct examination as his own first witness, counsel suggested to the court, in the following colloquy, that the children be interviewed by the court:

"MR. GIBSON: . . . I don't like to put ourselves in the position of letting the children themselves determine where their custody should be—but perhaps by talking to the children the Court might be able to arrive at a better conclusion. THE COURT: I am inclined in all cases such as this to talk to the children if they are of sufficient age."

Thus, the trial court made it clear that it intended to interview the children. Several witnesses were thereupon heard by the court in support of the father's petition that he be awarded custody of the children. At the close of the

evidence, respondent moved that the cross petition be dismissed. This motion the court denied.

The court then announced that it would talk to the children at chambers. Two things are clear from the record at this point: (1) Both parties agreed to the private interview of the children at chambers, and (2) both parties assumed that the interview was to concern only the cross petition for a change of custody to the father.

The cross petition for change of custody was the only matter under consideration at the time.

The court thereupon recessed the proceedings in the courtroom and interviewed both children at chambers. No court reporter was present at the interview, nor was a recording device employed by the court. Neither party requested that a record of the evidence and the proceedings at chambers be preserved. At the conclusion of the interview, the court resumed the bench and made the following ruling in the following language:

"There are things in this business of being a Judge that in addition to making me heartsick also make me angry. I suppose they make me angry and heartsick because in addition to being the Judge of this Court, I happen to be the father of three children. And parents, or a parent, who use the innocence of their own children, their own immaturity, to attempt to bring about their wishes, or attempt to display their anger or contempt for the other natural parent of the children, through using the children as pawns, is to me unforgivable.

". . .

". . . The statement which brings this Court almost to the conclusion of signing a bench warrant for contempt, of having this boy write to the Judge of this Court, which he has done, and convey the same ideas which he conveyed to his father—which as both counsel know is a definite contempt of this Court—any effort made by anyone to influence this Court in matters that are before it is a subject of contempt and is a subject for a jail sentence. And to have it verified to this Court in the interviews—that they were directed to write to this Court and directed what to say.

"I hope God will forgive you. This Court finds it very difficult.

"The motion for change of custody is denied, and this Court withdraws its earlier ruling, and the children may be taken to Salt Lake."

The court was acting well within its discretionary powers in denying the father's cross petition for a change of custody. Conversely, in reinstating the appellant's petition to remove the children from the state and granting the same, the court seemed to be governed exclusively by the evidence received and impressions formed at the private interview, and this presents a situation not covered by the cases which uphold the private interviews of children in divorce trials.

■ That the court may examine children at chambers in a divorce action, with the agreement of parties, is entirely discretionary. If a party waives the presence of a court reporter or the use of a recording device by failing to request that a record of the interview be kept, he is in no position to complain of the lack of a statement of facts covering the evidence given at the private interview. Consent to the private interview of children by the court at chambers constitutes a waiver of the right to claim error as to what occurred at chambers. *Kain v. Kain,* 51 Wn. (2d) 387, 318 P. (2d) 955; *Habich v. Habich,* 44 Wn. (2d) 195, 266 P. (2d) 346; *Nelson v. Nelson,* 43 Wn. (2d) 278, 260 P. (2d) 886.

Professor Luvern Rieke, in his treatise, The Divorce Act of 1949—One Decade Later, 35 Wash. L. Rev. 16, 40, says:

" . . . It seems established practice for the children to be consulted in the judge's chambers. No case has been found indicating the result of opposition to such interrogation, but counsel who consents may not later assign error based upon the interview. . . ."

The case at bar differs from the foregoing cases, however, because in each of them there was substantial evidence in the record to support the court's findings. Even in a situation where the court announced its intended ruling before the interview with the children, and announced a contrary ruling thereafter, the statement of facts reveals substantial

evidence to support the court's ultimate decision. *Nelson v. Nelson, supra.*

In the case at bar, however, there is no evidence to support the court's findings and conclusions that the mother be allowed to remove the children permanently from the state of Washington. Indeed, the evidence was quite to the contrary, and the court so ruled at the close of the petitioner's case. Evidence thereafter offered was presented by the father in support of his cross petition for a change in custody and it gave nothing from which the court could find that the wife's petition to remove the children ought to have been granted. Apparently something transpired at chambers which caused the court to view the evidence submitted by the mother in a new and different light, and to alter the court's impressions as to its weight and cogency, but we can only guess at what might have occurred. If we read the children's letters, which are in evidence, they clearly do not support the court's decision that the mother be allowed to take the children permanently from the state. From the impressions expressed by the court in its oral memorandum and in its findings, we can only conjecture what was said or done at chambers. The court gives us a clue as to what occurred, but a clue does not constitute evidence. The statement of facts discloses no evidence to warrant a modification of the decree of divorce by allowing the permanent removal of the children from the state, and innuendoes supplied by the court in its subsequent rulings do not make up the deficiency. As we have said on numerous occasions, there must be substantial evidence to support the court's decision, and the absence of a record as to what happened at chambers leaves us with no evidence to support the respondent's petition. Therefore, we cannot rule that she sustained her burden of proof to remove the children permanently from the state of Washington.

We are mindful, however, that in this, as in most divorce and modification cases involving the custody of children, time plays a particularly powerful role. A long period has elapsed since the order authorizing the removal of the

children to Salt Lake City. Perhaps changes have occurred with respect to the parties and the children which would warrant a different ruling than the one entered herein by the trial court, or perhaps its ruling ought to be sustained in the light of current conditions affecting the parties and the children.

Accordingly, this cause will be remanded to the trial court for a new trial with leave in either party to submit evidence on issues raised by the petition or the cross petition covering events and circumstances up to and including the date that this remittitur goes down.

One other issue remains. The trial judge entered an order fixing the sum of five hundred dollars as a reasonable attorney's fee on appeal, and prescribed that payment thereof by appellant to respondent was a condition precedent to the appeal. Appellant challenges this order. The record shows that respondent's application for the allowance of this fee on appeal was supported by a showing of need, and, where the record shows that need exists, the allowance of the attorney's fee is a matter of discretion. Where there is substantial proof of need and a showing that a wife would be without adequate representation should the court disallow an attorney's fee to her, we have held that the denial of such an allowance is an abuse of discretion. *Krieger v. Krieger*, 133 Wash. 183, 233 Pac. 306. The allowance of fees to either party is governed by the needs on the one hand and the financial ability to pay on the other. The same rule follows on appeals and proceedings to modify the divorce decree. *Kain v. Kain, supra.* The allowance of the attorney's fee on appeal was well within the trial court's discretion.

The judgment is reversed and a new trial ordered in accordance with the views herein expressed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.