[No. 4937–0–III.   Division Three.   June 29, 1982.]

*In the Matter of the Marriage of* LEONARD THOMPSON, *Respondent, and* DARCY THOMPSON, *Appellant.*

*John A. Bardelli,* for appellant.

*Kenneth D. Carpenter,* for respondent.

GREEN, J.—Darcy Thompson appeals the modification of a decree of dissolution of marriage changing the care, custody and control of her minor children, Corey and Jeremy Thompson, from herself to their father, Leonard Thompson.

The primary issue is whether the mother's allowance of extended visitation by the children with their father constitutes consent to the children's becoming integrated into the father's home for the purpose of modification of a custody decree under RCW 26.09.260(1)(b).

The facts are: In November 1973, Darcy and Leonard Thompson were married. Corey and Jeremy were born of this marriage. They remained with their mother when the parties separated in October 1978. In December 1979, a decree of dissolution was entered awarding custody of the children to their mother, subject to reasonable visitation by the father.

In March 1981, the father asked the mother if he could have the children with him during the summer months of June through August 1981. In April 1981, the mother, due to financial difficulties induced in part by the father's failure to make child support payments, asked the father to take the children from April through August 1981. He

acceded to this request and it was agreed the children would be returned to their mother at the end of August. In late August, the father telephoned the mother and told her he would be returning the children to her by September 1, 1981. Instead, on August 31 the father filed a petition for modification of child custody.

At the time of the modification hearing, the father owed approximately $3,500 in back child support. Nevertheless, the court held: A change in circumstances had occurred since entry of the original decree; the mother had consented to a change of legal custody of the children in April 1981; and the children had been integrated into the father's home over a period of more than 5 months and, therefore, it would be in their best interest to change legal custody to the father.

The mother contends since the parties agreed the father was to return the children to their mother at the end of August, she did not consent to their being integrated into the father's home; thus, the court abused its discretion in finding there was both consent and integration. We agree.

RCW 26.09.260 provides:

> (1) The court shall not modify a prior custody decree unless it finds, . . . that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior decree unless:
>
> . . .
>
> (b) The child has been integrated into the family of the petitioner *with the consent of the custodian*; . . .

(Italics ours.)

■ The word "consent" as used in this statute was discussed in dicta in *In re Marriage of Timmons*, 94 Wn.2d 594, 601, 617 P.2d 1032 (1980):

> "Consent" refers to a voluntary acquiescence to surrender of legal custody. It may be shown by evidence of the relinquishing parent's intent, or by the creation of an expectation in the other parent and in the children that a change in physical custody would be permanent. The

children's views as to where "home" is, and whether the environment established at each parent's residence is permanent or temporary are significant in determining whether "consent" and "integration" are shown. While time spent with each parent is not determinative, it is a factor.

Here, because the mother and father agreed the children would be returned to the mother at the end of the summer, there was no expectation created in the father that the change in physical custody of the children would be permanent. Neither did the mother intend the children be in the physical custody of the father permanently. Further, there is evidence the children did not consider their father's residence as "home".

RCW 26.09.200 *et seq.*, which is modeled after the Uniform Marriage and Divorce Act, was designed to favor custodian continuity and disfavor modification. *In re Marriage of Roorda*, 25 Wn. App. 849, 851, 611 P.2d 794 (1980); *Anderson v. Anderson*, 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied*, 86 Wn.2d 1009 (1976). The policy reasons underlying the marriage dissolution act are to: (1) maximize the finality of custody awards since children and their parents should not be subjected to repeated litigation of custody issues determined in the original action, *Schuster v. Schuster*, 90 Wn.2d 626, 628, 585 P.2d 130 (1978); *In re Marriage of Roorda, supra* at 852; (2) prevent "ping–pong" custody litigation, *Korol v. Korol*, 613 P.2d 1016, 1019–20 (Mont. 1980), since stability of the child's environment is of utmost concern, *Schuster v. Schuster, supra* at 628; and (3) preserve the basic policy of custodial continuity since custodial changes are viewed as highly disruptive for the child, *In re Marriage of Roorda, supra* at 851; *Anderson v. Anderson, supra* at 368.

The policy reasons behind this statute would be defeated if modification of custody were allowed under these circumstances. It is not unusual for parents to arrange for summer visitation of the children with the noncustodial parent. That is all that occurred in this case. The length of

the visitation was induced in part by the father's substantial default in support payments. To sanction a change in custody here would undermine the finality of custody decrees, promote "ping-pong" litigation over custody and undermine the stability of a child's environment. This was not the intent of the Legislature.

Reversed.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied August 9, 1982.