[No. 7411-1-III. Division Three. June 11, 1987.]

*In the Matter of the Marriage of* KRISTIE JEAN MURPHY, *Respondent, and* DAVID WAYNE SWOFFORD, *Appellant.*

---

*Pamela J. DeRusha* and *Winston & Cashatt,* for appellant.

THOMPSON, A.C.J.—David Wayne Swofford appeals an order modifying the joint custody provisions of a dissolution decree by awarding sole custody of his daughter to Kristie Murphy, the child's mother. We affirm.

David and Kristie were married in 1979. One child, Lindsey, was born in 1980. On January 11, 1984, the marriage was dissolved and the decree of dissolution awarded the parents joint custody with the physical residence of the child alternating every week between the parents. Neither parent was to leave the state with the child for·more than 24 hours without prior written permission of the other. On June 25, 1984, the mother moved to Portland, Oregon, taking Lindsey with her and failing to notify the father of her whereabouts for several weeks.

On August 30, the mother successfully moved for modification of custody and was awarded sole custody of Lindsey with reasonable visitation to the father. The father appeals,

claiming the court used the wrong statutory standard for modification of child custody and the court's findings are not supported by sufficient evidence.

The mother's attorney withdrew and she has not filed a brief in this appeal; thus, our review is limited to examining the appellant's brief to determine if it presents a prima facie showing of error. *Aquarian Found. v. KTVW, Inc.,* 11 Wn. App. 476, 523 P.2d 969 (1974).

The court in its memorandum opinion observed that the standards to be followed in custody modification proceedings are set forth in RCW 26.09.260:

> This statute directs that modification shall not occur unless the Court finds (1) "That a change has occurred in the circumstances of the child or his custodian" and (2) "That modification is necessary to serve the best interests of the child." For the purposes of this case, the statute then provides that in applying the two standards above, the Court should retain the *custodian established by the prior decree* unless "the child's present environment is detrimental to his physical, mental or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."

RCW 26.09.260(1)(c) permits modification of custody only if there is sufficient evidence to support a finding: (1) there has been a change in circumstances; (2) the present environment is detrimental to the child's physical, mental or emotional health; (3) the harm caused by a change is outweighed by the advantage of the change; and (4) the best interests of the child will be served by the modification. *In re Marriage of Roorda,* 25 Wn. App. 849, 852, 611 P.2d 794 (1980); *Anderson v. Anderson,* 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied,* 86 Wn.2d 1009 (1976).

The court initially noted that RCW 26.09.260 makes reference to "the custodian established by the prior decree", and concluded that in the context of joint custody, the inquiry under the statute is whether there has been a change in the circumstances of the *"joint custodians* as

established by the decree". Because of the mother's remarriage and new residence in Oregon, the court found the original decree awarding weekly alternating physical custody to each party no longer workable or feasible. The change in circumstances was found to equally affect the circumstances of the child, and the court further held that a subsequent temporary order alternating custody on a month–to–month basis was likewise a significant change in circumstances from the original decree.

The court found neither arrangement to be an acceptable custodial situation, and both in fact detrimental to the child's welfare, particularly where the child was approaching school age. The court's determination that the "present environment" was detrimental to the child referred to the continuing joint custodial arrangement following the mother's remarriage and move to Oregon. Although the court did not expressly rule on whether the harm caused by the change was outweighed by the advantage of the change, that factor was implicit in the remainder of the court's modification analysis.

The court next engaged in a determination of the best interests of the child, noting at the threshold that under the unique joint custody arrangement the statutory "custodian established by the decree" could not reasonably be retained. Since both parties had a similar "custodial" status, the court looked to RCW 26.09.190 factors involving an initial custody award to determine the best interests of the child in the modification.

Guided by the RCW 26.09.190 "best interests of the child" test, the court examined the wishes of the parents, the wishes of the child, evidence as to the child's interaction with each parent, the child's adjustment to home, school and community, and the mental and physical health of those involved. It concluded that, although both parents were fit and maintained a good relationship with the child, under all the circumstances, the interests of Lindsey would be better served by awarding custody to the mother. The father was granted extensive visitation rights, including one

4–day weekend per month, 5 weeks during the summer, the second week of Christmas vacation, 1 week of spring vacation, and other times as schedules of all parties permitted.

██ Although we concur with the trial court that the final determination as to the custody of Lindsey presented "one of the most difficult custody determinations", substantial evidence supports the trial court's decision. Under these facts the court was faced with the problem of applying a single custodian modification standard to a joint custodial situation and properly concluded the changed circumstances rendered joint custody unworkable and detrimental. The mother's initial move to Oregon in violation of the original decree should not be condoned and could have resulted in sanctions, but it should not be the controlling consideration as to whether modification under this unique joint custodial arrangement would be allowed. It would be inappropriate to sacrifice the best interests of the child based on the misconduct of one parent, although, depending on the nature of the misconduct, it could under appropriate facts, in effect control the court's judgment as to who is best qualified to be the custodial parent. In this case the court chose not to let the mother's misfeasance be the controlling consideration, and that judgment will not be disturbed on appeal absent a showing of an abuse of discretion.

Finally, we reject Mr. Swofford's contention and the dissent's assertion the trial court's ruling was improperly based on Mr. Swofford's religious beliefs. The court validly expressed concern for the relationship between the mother and child following her "disfellowship" from the father's church, as reflected by the testimony concerning the moral obligation of church members to disassociate themselves with her. We conclude the trial court properly examined the entire set of circumstances which included the father's attitude toward the mother. We find no constitutional deprivation inherent in the court's determination:

I want to make it clear to all parties that I intend no criticism of their religion or the doctrine they follow; it is

neither my place nor purpose to so criticize. The church members have every right to declare the doctrine applicable to their members including that of disfellowship. It is the potential, if not almost certain, effect upon the child that causes me the concern.

It is clear that under church doctrine, members are disfellowshipped in public and other members encouraged to have no association with disfellowshipped members.

It is also clear that respondent considers petitioner properly disfellowshipped and as an "immoral person."

It is within this atmosphere that the child's relationship with her mother would have to exist.

There is little question that it is a valuable right of the child to continue a relationship with both parents; indeed it is the duty of each parent to foster and encourage a good and loving relationship between the child and the other parent. It is also the right of each parent to expect the same encouragement from the other.

Without intending to suggest that I feel the respondent or other church members would deliberately and maliciously disparage the mother, the fact remains that the fostering of a good and enduring relationship with the mother would encounter clear obstacles along the way.

I do not mean to suggest that awarding the mother custody will eliminate this difficulty; at best, the difficulty may be lessened. Although the above concern is not the sole and determinative factor, it is, in my view, one of the appropriate factors for the Court to consider.

A prima facie showing of error has not been made in this case; thus, we affirm the trial court.

MUNSON, J., concurs.

GREEN, J. (dissenting)—I dissent. RCW 26.09.260 provides:

(1) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the

best interests of the child. In applying these standards the *court shall retain the custodian established by the prior decree unless:*

. . .

(c) *The child's present environment is detrimental to his physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.*

(Italics mine.) Custodial changes are viewed as highly disruptive to the child, *Anderson v. Anderson,* 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied,* 86 Wn.2d 1009 (1976), and therefore there is a strong presumption in favor of custodial continuity and against modification. *In re Marriage of Roorda,* 25 Wn. App. 849, 851, 611 P.2d 794 (1980). A heavy burden is thus placed on the parent petitioning for the modification to present evidence supporting the statutory requirements. *Roorda,* at 851. These principles apply to joint custody situations. *In re Marriage of Raugust,* 29 Wn. App. 53, 54, 627 P.2d 558 (1981).

Here, the fitness of the parents has not changed since the dissolution decree was entered awarding these parents joint custody of their child. Following the hearing on the petition for modification, the court again found both parents to be fit. The only change found was the mother's remarriage and move to Portland, Oregon. There is absolutely no evidence in the record showing the child's "present environment", whether it be the environment of joint custody established by the dissolution decree or the environment precipitated by the mother's move, is detrimental to the child's "physical, mental, or emotional health". RCW 26.09.260(1)(c). The only evidence remotely showing a possibility of detriment is that the child indicated she missed her mother when she is with her father and had concern for the father while she is with the mother. This emotional reaction by *the child* is not unique to joint custody arrangements, but rather is directly related to the dissolution of the parents' marriage—almost all children from broken homes experience these emotions. Thus, the statutory requirements have not been met and I would find the court erred in modifying

the joint custody provisions of the dissolution decree. However, the court could have changed the arrangements as to the primary custodian and when each parent would have physical custody.

The policy reasons underlying RCW 26.09.260 and the presumption in favor of custodial continuity and against modification are (1) to maximize finality of custody awards since children and their parents should not be subjected to repeated litigation of the custody issues determined in the original action; (2) to prevent "ping–pong" custody litigation since stability of the child's environment is of utmost concern; and (3) to preserve the basic policy of custodial continuity since custodial changes are viewed as highly disruptive to the child. *In re Rankin,* 76 Wn.2d 533, 458 P.2d 176 (1969); *In re Marriage of Thompson,* 32 Wn. App. 418, 421, 647 P.2d 1049 (1982).

It is true the mother's misconduct of moving with the child to Oregon without notifying the father in direct violation of the dissolution decree should not be used as a basis for modification. *Schuster v. Schuster,* 90 Wn.2d 626, 630, 585 P.2d 130 (1978). However, it is in direct contravention of the policy behind RCW 26.09.260 that a parent who creates the change in circumstances can thereafter move for modification of custody based on the self–created situation and gain sole custody of the child when both parents are still found to be fit. One should not be allowed to benefit from his or her wrongdoing, nor should an innocent party lose custodial privileges because of a situation created solely by the other's wrongful acts. Thus, in my view, a custody provision in a dissolution decree should not be modified based on one parent's wrongful removal of the child from the state unless a material change in conditions is shown to be detrimental to the child's welfare. *Christopher v. Christopher,* 62 Wn.2d 82, 85, 381 P.2d 115 (1963). Here, there is no testimony or other evidence that a continuation of joint custody would be detrimental to the child or that a rearrangement of the times when the parents would have physical custody would not satisfy the distance

aspects of custody. The proper procedure would have been for the mother to move for modification of custody prior to leaving the state. *See Christopher v. Christopher, supra; In re Marriage of Osborn,* 24 Wn. App. 862, 604 P.2d 954 (1979). Thus, joint custody should be reinstated with a modification of the physical custody provisions of the decree.

Finally, Mr. Swofford also assigned error to the court's consideration of his religious beliefs citing to his First Amendment right to freedom of religion. Religious decisions and acts may be considered in the custody decision only to the extent they will jeopardize the temporal mental health or physical safety of the child and there must be shown a reasonable and substantial likelihood of immediate or future impairment. *In re Marriage of Hadeen,* 27 Wn. App. 566, 579, 619 P.2d 374 (1980), *review denied,* 95 Wn.2d 1009 (1981). Here, the court, in making its determination to award sole custody to the mother, stated in its memorandum decision Mr. Swofford's religion, while not the sole and determinative factor, was an appropriate one for the court to consider because the father's religion would interfere with the fostering of a good and enduring relationship with the mother. The court thereafter entered several findings regarding Mr. Swofford's religion and its possible effect on the child's relationship with her mother.

Since it is clear from the record and findings one of the determinative factors was the father's religious beliefs, and in the absence of a finding the father's religious beliefs posed a threat to the mental and physical welfare of the child, it was improper for the court to consider the father's religious involvement as an ingredient in its decision to modify custody. *In re Marriage of Hadeen, supra* at 581; *see Munoz v. Munoz,* 79 Wn.2d 810, 813–14, 489 P.2d 1133 (1971); *see also* Annot., *Religion as Factor in Child Custody and Visitation Cases,* 22 A.L.R.4th 971 (1983). Additionally, there is no evidence in the record to support the court's findings Mr. Swofford's religious beliefs posed a threat to the child's mental and physical welfare or that he,

based on his religious beliefs or otherwise, interfered with or deterred the relationship between the child and the mother either during the marriage or after the separation and divorce.

For these reasons I would hold the court's action in modifying custody from joint to sole custody in the mother is not supported by the record. In my view, joint custody should not have been disturbed. Instead, the court should have continued joint custody and then have developed an appropriate and workable arrangement of physical custody between the parents. For example, one parent could have physical custody during the school year and the other parent at other times during the year. *See Wheeler v. Wheeler,* 37 Wn.2d 159, 165, 222 P.2d 400 (1950); *Earling v. Earling,* 117 Wash. 584, 586, 201 P. 908 (1921). Prima facie error has been shown under *Aquarian Found. v. KTVW, Inc.,* 11 Wn. App. 476, 523 P.2d 969 (1974).

Thus, I would reinstate the joint custody arrangement and remand for a further hearing to determine a workable arrangement for physical custody. Since considerable time has elapsed since the modification was made, present circumstances should be considered.