# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

2017 OCT 30 AM 10:31
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

In the Matter of the Parentage of    )    No. 75368-1-I
                                     )
A.F.M.B., minor child,           )
                                     )
JACK BRYAN BLAKE,          )
                                     )
          Respondent,    )
                                     )
      and                    )
                                     )
LESLIE MARIE MACKENZIE,   )    UNPUBLISHED OPINION
                                     )
          Appellant.     )    FILED: October 30, 2017

VERELLEN, C.J. — Leslie MacKenzie appeals the trial court's 2016 order (2016 plan) purporting to grant a minor modification of a 2011 final parenting plan (2011 plan).

The 2016 plan includes an unlimited first right of refusal, granting a parent the first right to time with the child if the parent with residential placement is unavailable, superseding any right of the unavailable parent to select a third party, including that parent's family members. Because the record and findings do not support this unlimited and uncapped right as part of a minor modification, we conclude the court abused its discretion.

The 2011 plan included an RCW 26.09.191(3) abusive use of conflict finding, but the 2016 plan did not reflect that finding or explain why it no longer applied.

Because the record before us does not reveal how or why the trial court reached its conclusion, remand is required.

Because two sole decision-making provisions are in conflict, we remand with instructions to reconcile the contradictions in sections 4.2 and 4.3 of the 2016 plan.

Other challenges by the mother are not compelling. While stalking by proxy is a very serious concern, evidence viewed in a light most favorable to the father supports the trial court's finding there was insufficient evidence that the father was complicit in stalking. And that finding supports the conclusion that RCW 26.09.191(2) restrictions are not warranted. The court did not abuse its discretion in denying the mother's request for a guardian ad litem (GAL) on a minor modification. The mother does not establish that the 2016 plan exceeds the 24 full-day limit of RCW 26.09.250(5) for a minor modification.

Therefore, we reverse and remand to the trial court for further proceedings consistent with this opinion.

## FACTS

Leslie MacKenzie (mother) and Jack Blake (father) met in 2005 and maintained a brief dating relationship. In 2006, the mother became pregnant with the father's child. During her pregnancy and the first 15 months of A.F.M.B.'s[1] life, the mother received no assistance from the father.

King County Superior Court entered a temporary parenting plan in 2009. The court appointed a GAL to complete an investigation and report. The GAL noted:

---

[1] Because this is a sealed parentage case, we use the minor child's initials.

> Although there is no evidence or allegations to suggest that Jack has engaged in any acts of physical aggression toward Leslie or [A.F.M.B.], some of Jack's behavior is consistent with the psychologically abusive, coercive control tactics used by perpetrators of intimate partner violence. My concern is that in the absence of intervention, Jack's coercive and controlling behavior may have a negative impact on [A.F.M.B.]'s emotion well-being, and/or that this behavior could eventually escalate to a degree that he may exhibit physical violence.[2]

The GAL also concluded the mother should have sole decision-making authority regarding A.F.M.B.'s education, daycare, health care, and "any other significant decisions" because the father "has engaged in the abusive use of conflict, and the parties' difficulty communicating effectively."[3]

The court entered a final parenting plan on June 7, 2011, which included parental conduct restrictions under RCW 26.09.191(3):

> The father's involvement or conduct may have an adverse effect on the child's best interests because of the existence of the abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development, and because of the father's neglect and nonperformance of parenting functions for the first half of the child's life as of the time of trial.[4]

The 2011 plan also included a residential schedule addressing scheduling before A.F.M.B. enrolled in school, after she started school, winter vacations, summer vacations, other school breaks, vacation with parents, holidays, and special occasions.

The court entered a domestic violence order for protection against the father on January 25, 2012 and renewed it on January 15, 2013.

---

[2] Clerk's Papers (CP) at 745.

[3] CP at 746.

[4] CP at 31.

On January 30, 2012, the court amended the 2011 plan, redacting and replacing the transportation arrangements paragraph under the residential schedule to emphasize that the mother had the discretion to choose a public location at which to exchange A.F.M.B.

On January 7, 2013, the father petitioned to modify the 2011 plan, alleging there had been a substantial change in circumstances because the mother's mental illness and violent outbursts were "detrimental to the children's physical, mental or emotional health and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the children."[5] The court declined to reach the merits because the father "failed to follow the case schedule."[6] The father filed another petition to modify on November 25, alleging the same change in circumstances.

A superior court commissioner found no adequate cause to grant the father's petition to modify the 2011 plan. The father moved to revise the adequate cause denial, and the mother moved to revise the decision not to renew the order of protection. In its March 28, 2014 oral ruling, the court concluded the father "[d]id not meet the standard for major parenting plan modification" but granted "the motion for revision on the parenting plan issue . . . only to a minor [modification of the] parenting plan."[7] The court also declined to rule on whether it would appoint a GAL.

The court entered a temporary parenting plan on March 26, 2015. The mother moved to reconsider, seeking to undo the changes concerning exchanges and

---

[5] CP at 256.

[6] CP at 330.

[7] Report of Proceedings (RP) (Mar. 28, 2014) at 76.

removal of the 2011 plan's RCW 26.09.191(3) restriction. The court denied the motion but issued several clarifications and emphasized that its order was a temporary plan.

On November 4, 2015, the mother filed a motion to reinstate the GAL from the 2010 investigation at the father's expense. In its November 13 oral ruling, the court declined to appoint a GAL but suggested the parties pursue counseling.

On the father's motion, the trial court entered a final parenting plan on March 29, 2016. The court denied the mother's motion for reconsideration.

The mother appeals.

ANALYSIS

*I. Standard of Review*

We review a parenting plan for abuse of discretion.[8] A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.[9] The trial court's findings of fact will be accepted by the reviewing court, so long as they are supported by substantial evidence.[10]

*II. First Right of Refusal*

The mother argues the trial court erred when it included a first right of refusal provision in the 2016 plan:

> 6.1.19 First Right of Refusal. At any time that either parent is unable to care for [A.F.M.B.] during his or her regularly scheduled residential time, the opportunity to care for [A.F.M.B.] shall be offered to

---

[8] In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997).

[9] Id. at 46-47.

[10] Ferree v. Doric Co., 62 Wn.2d 561, 568, 383 P.2d 900 (1963).

the other parent before the child is enrolled in child care or placed in the care of another third party.[11]

The father acknowledges this clause is typically included in low conflict situations where cooperative parents have shown the ability to co-parent. The father suggests the court observed A.F.M.B. was spending time in daycare at the YMCA, and the father has a flexible schedule because he is retired. But whether a child should spend time with a parent rather than in daycare requires consideration of the specific facts and circumstances of each case.

The policy supporting a first right of refusal is analogous to the policies underlying joint custody, where our courts have recognized concerns with high conflict and uncooperative parents.[12]

A history of domestic violence and abusive use of conflict would also seem inconsistent with a first right of refusal provision, unless the record affirmatively reveals the court has good reason to conclude the parents and child are suited for such a provision.

Here, a vague observation in the record that it may be a good idea for a first right of refusal provision is inadequate. This provision extends to "child care" or "another third party," and it appears that any visits or care with other relatives are subject to the provision. At oral argument, the father suggested that such a visit with

---

[11] CP at 665-66.

[12] See In re Marriage of Stern, 57 Wn. App. 707, 715, 789 P.2d 807 (1990) (noting that in a joint custody determination, "the court must be equally mindful of the 'joint custodial environment' and whether changed circumstances have rendered joint custody unworkable and detrimental"); In re Marriage of Murphy, 48 Wn. App. 196, 737 P.2d 1319 (1987) (establishing that a finding of detriment to the child in his or her present environment need not be based on the parenting of either party but may arise from a change in the joint custodial environment).

relatives during the mother's residential time would not trigger the provision so long as the mother is actually available to care for the child herself. But nothing in the record reveals the court considered or imposed such a limitation.

Additionally, the provision seems to apply "any time" with no qualification regarding the minimum amount of time required to trigger the right of first refusal. For example, it would seem impractical to extend the provision with attendant transportation and transfer logistics if the mother is unavailable for only an hour or two. At oral argument, the father argued the clause is reciprocal and applies if *either* parent is unavailable. But the trial court acknowledged the reality that the mother is working full-time, whereas the father is retired and has a flexible schedule. In this setting, the clause has the potential to significantly shift residential time to the father. This consideration is especially significant in the context of a minor modification. A minor modification under RCW 26.09.260 may not exceed 24 full days per year.[13] Without a cap on the time subject to transfer during a year, there is no way to determine whether the new parenting plan qualifies as a minor modification.

Therefore, this record does not establish that the trial court made a tenable decision by imposing an unlimited and uncapped right of first refusal provision in a minor modification, especially in the absence of any meaningful discussion of the father's history of abusive use of conflict and domestic violence protection orders.

---

[13] RCW 26.09.260(5)(a).

## III. RCW 26.09.191(3) Finding

The mother argues the trial court erred by removing the RCW 26.09.191(3) restriction the court imposed in the 2011 plan without making any specific findings. That statute provides:

> (3) A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
>
> . . . .
>
> (e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development.[14]

RCW 26.09.260(7) provides:

> A parent with whom the child does not reside a majority of the time and whose *residential time* with the child is *subject to limitations pursuant to RCW 26.09.191(2) or (3)* may not seek expansion of residential time under subsection (5)(c) of this section unless that parent demonstrates a substantial change in circumstances *specifically related to the basis for the limitation*.[15]

The 2011 plan imposed a restriction on the father under RCW 26.09.191(3)(e). The court found "a history of controlling behavior by the father toward the mother, as well as abusive use of conflict including extraordinary litigation over the period of a year and a half up to trial."[16] The court recognized his conduct may have an adverse effect on A.F.M.B.'s best interests. The court referred to the abusive use of conflict in its award of attorney fees to the mother, but did not restrict the father's residential placement based on the .191 finding.

---

14 RCW 26.09.191(3)(e).

15 (Emphasis added.)

16 CP at 47-48.

In the only portion of the 2016 plan that mentions RCW 26.09.191(3), the court noted "Does not apply" without any further comment or finding.[17] But in its March 16, 2015 oral ruling, the court recognized

> what Judge Fleck ordered in her [2011] findings are there. They are not changeable. We can modify them and say that they don't, that they, a parenting plan, a new parenting plan, should be admitted and determine what goes in that. But nobody is taking and removing Judge Fleck's [2011 plan] findings.[18]

Because the record on appeal does not reveal how or why the trial court decided to delete the RCW 26.09.191(3) restriction, remand is required.

### IV. RCW 26.09.191(2)

Apart from the abusive use of conflict finding in the 2011 plan, the mother and amicus Legal Voice challenge the trial court's failure to find that the father has engaged in ongoing stalking. Specifically, they contend the trial court should have imposed RCW 26.09.191(2)(a)(iii) restrictions in the 2016 plan.

RCW 26.09.191(2)(a)(iii) provides that a "parent's residential time with the child shall be limited if it is found that the parent has engaged in . . . a history of domestic violence as defined in RCW 26.50.010(1)." RCW 26.50.010(3)(c) includes stalking within the definition of "domestic violence."

In 2015, regarding allegations that a friend of the father was following the mother, the trial court found "[t]here was evidence presented, that was troublesome, regarding stalking the mother, primarily following her or her attorney, after court hearings."[19] The court declined to restrict the father's residential time because of

---

[17] CP at 657.

[18] RP (Mar. 16, 2015) at 140.

[19] CP at 621.

"insufficient evidence to conclude that father was complicit in any such stalking, *but there is sufficient evidence that it has taken place.*"[20] The court explained:

> The court's concern in this regard comes from, in part, the testimony of a witness who was described by father as being a close confidant of many years duration, and with whom he continues to consult. On direct examination that witness denied, without reservation, involvement in any investigation of the mother, and then, on cross examination admitted several acts that can only be understood as constituting an investigation of the mother. It is difficult to understand how the witness' direct testimony could be anything other than an attempt on the part of the witness, to intentionally mislead the court.[21]

As noted by amicus Legal Voice, proxy stalking warrants serious consideration. But we do not revisit credibility determinations made by the trial court.[22] The trial court weighed the evidence, made specific findings that the father was not complicit in the alleged stalking, and explained its reasoning for not imposing RCW 26.09.191(2) restrictions. We conclude the trial court did not abuse its discretion.[23]

## V. GAL

The mother argues the trial court erred when it did not appoint a GAL for an updated analysis of A.F.M.B.'s best interests. We review a court's decision whether to appoint a GAL for abuse of discretion.[24]

---

[20] CP at 621 (emphasis added).

[21] CP at 622.

[22] State v. Drum, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

[23] In Matter of Parentage and Support of L.H., 198 Wn. App. 190, 194, 391 P.3d 490 (2016) ("The trial court has discretion to determine whether the evidence presented meets the requirements of RCW 26.09.191.").

[24] RCW 26.09.220; RCW 26.12.175; Wildermuth v. Wildermuth, 14 Wn. App. 442, 446, 542 P.2d 463 (1975); In Matter of Parentage and Support of S.M.L., 142 Wn. App. 110, 120, 173 P.3d 967 (2007).

10

Here, the trial court declined to appoint a GAL, expressing concern over cost and concluding that a counselor would be an appropriate solution given the facts of the case. The mother fails to cite compelling authority in support of her challenge. We conclude the trial court did not abuse its discretion in declining to appoint a GAL.

### V. Minor Modification

The mother contends there was not a substantial change in circumstances supporting a minor modification to enroll A.F.M.B. in additional or different extracurricular activities.

But RCW 26.09.260(5) requires a "showing of a substantial change in circumstances of *either parent* or of the child."[25] The 2011 plan included a section titled "Attending Activities," but it was merely generic boilerplate language regarding attendance. It did not address extracurricular activities or how the parents are to coordinate A.F.M.B.'s activities and their involvement. A.F.M.B.'s significant increased participation in athletic extracurricular activities was a substantial change supporting a minor modification.

Next, the mother asserts that, aside from the uncertain impact of the first right of refusal provision, the 2016 plan far exceeds the 24 full-day limit on revisions of residential placement by minor modification. She contends the 2016 plan contains "at a minimum," a total of 40 additional days.[26]

---

[25] (Emphasis added.)
[26] Reply Br. at 3.

But many of her alleged net gains on special occasions ignore the true impact of the changes made. For example, each parent is allotted residential placement for their own birthday. The time allotted in in the 2011 plan increased to an overnight stay in the 2016 plan. The father's time increases on his birthday, but decreases an equal amount on the mother's birthday. There is no net gain. The 2016 plan increased the time for some holidays. For example, Thanksgiving increased from one day to five days, but that holiday alternates each year. In a year when the father has Thanksgiving, his time increases from one day in the 2011 plan to five days in the 2016 plan, and the mother enjoys the exact same increase in alternate years. The mother offers no authority that the net gain from year to year for alternating holidays or schedules is properly considered when computing the 24 full-day time limit on minor modifications. Her computations ignore the true net gain realized in the 2016 plan.[27] She fails to establish the minor modification exceeded statutory limitations.[28]

*VI. Decision-Making Discrepancy*

The mother contends the trial court erred when it assigned sole decision-making authority to the father in one section and to her in a different section of the 2016 plan.

The 2016 plan provides:

---

[27] See In re Marriage of Hansen, 81 Wn. App. 494, 499, 914 P.2d 799 (1996) ("It does not appear the Legislature intended changes of less than a full day to go uncounted. . . .The only reasonable construction of 'full day' would seem to be changes in the residential schedule totaling 24 hours.").

[28] The mother also argues there was no adequate cause supporting a major modification, but the trial court did not conclude, and the father does not contend, there was a basis for a major modification.

### 4.2 Major Decisions

Major decisions on education, preschool and daycare are *made by the mother.* Major decisions regarding non-emergency health care shall be *made by the Mother.* . . .

. . . .

### 4.3 Restrictions on Decision Making

*Sole decision making shall be ordered to [Father].*[29]

The mother raised this inconsistency in her motion for reconsideration, but the trial court did not address it. The father acknowledges his request was that the decision-making authority was to allow him "to get [A.F.M.B.] enrolled in in-school counseling,"[30] *not* for sole decision making. He concedes "the 2016 plan mistakenly grants the Father too broad of authority under § 4.3 of the parenting plan"[31] and contends the court must have intended to give him authority over school counseling and it was merely a scrivener's error. But nothing in the record supports his argument.

We remand to the trial court with instructions to reconcile the contradictions in sections 4.2 and 4.3 of the 2016 plan.

## VI. Attorney Fees

The mother requests attorney fees on appeal pursuant to RAP 18.1 and RCW 26.09.140.

A court may award costs and attorney fees in a RCW 26.09.140 proceeding after considering the financial resources of both parties. The prevailing party

---

[29] CP at 662-63 (emphasis added) (boldface omitted).

[30] CP at 964.

[31] Resp't's Br. at 42.

standard does not apply in such proceedings.[32] In considering the financial resources of both parties, we balance the needs of the requesting party against the other party's ability to pay.[33]

In view of the limited resources of both parties, we decline to award fees under need and ability to pay.

*VII. Conclusion*

Therefore, we reverse and remand for further proceedings consistent with this opinion.

WE CONCUR:

Cox, J.

Leach, J.

---

[32] In re Marriage of Wilson, 117 Wn. App. 40, 51, 68 P.3d 1121 (2003).

[33] In re Marriage of Trichak, 72 Wn. App. 21, 26, 863 P.2d 585 (1993).