IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 28179-5-III |
| | ) | (consolidated with |
| CATHERINE LYNN BAXTER, | ) | No. 29631-8-III, |
| | ) | No. 29701-2-III, |
| Appellant, | ) | No. 35205-6-III, |
| | ) | No. 35413-0-III) |
| and | ) | |
| | ) | |
| MICHAEL AARON BAXTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Michael Baxter and Catherine Baxter (now known as Catherine

Cook) separated in 2005 and entered into an agreed parenting plan and dissolution decree

in 2006. Since that time, the parties have litigated issues regarding credit card debt and

placement of their son. Both issues are now on appeal. We affirm.

FACTS

*Credit card debt*

In June 2006, after a settlement conference with the parties and their counsel,

the trial court went on the record to memorialize and confirm the agreement reached

between the parties. After summarizing the agreement, including the agreed parenting

plan entered in May 2006, the trial court addressed what it considered the "last issue"

regarding debt. Clerk's Papers (CP) at 291. The court specifically stated: "The last issue is $36,000.00 give or take a few thousand, we don't have verification of the debts, but assuming it's around $36,000.00, the parties agree to split whatever that is 50/50. The attorneys can work out the particulars." *Id.* Both Ms. Cook and Mr. Baxter were sworn and asked if they agreed to be bound by the terms and conditions of the agreement, and sign the necessary documents to carry the agreement into effect, to which they both responded affirmatively. After receiving the acknowledgment of the parties, the trial court commented that the agreement was fair to both parties, despite "some missing details," and found there was "no hidden agendas here. Everything is out on the table. Obviously if there's something hidden and I'm not aware of it that would negate the agreement anyway. Assuming these numbers are in the ball park, we've got I think an equitable agreement." *Id.* at 294-95.

On August 18, 2006, a presentment hearing was held for entry of the agreed dissolution decree. At the hearing, Mr. Baxter's attorney addressed the issue of credit card debt, stating:

> As to the debt, I am at a loss here. They represented at the settlement it was $36,000. I have a letter from them where then they represented it was $36,379 but they had a mathematical error of $2,800. Then in response to our proof of $31,742 they came back and told me . . . that it was actually $25. I said give me your proof. Now it is $3,000. Here is what I suggest we do to get these people divorced. I suggest consistent with the

2

> agreement, we say that they are each responsible for one half of the community credit card debt associated with the Alaska property and strike the amounts. We can go ahead and argue that on another day and I will reserve the right to ask for fees, because here today there is a $30,000 difference and their own figures are all off the board.
> . . . .
> I suggest that we just wipe out the figures and make it one half and strike out the blocking of the accounts and the security.

CP at 276-77. Ms. Cook's counsel agreed with the foregoing plan. The trial court approved the agreement, noting "when you can't agree on the [debt] number obviously you do it in the generic sense." *Id.* at 277. Mr. Baxter's counsel responded that another issue arose then, and that "[i]f there is $31,000 out there, and the Alaskan debt then for whatever reason is less than that, both of them are still going to be responsible on that remaining debt." *Id.* Ms. Cook's counsel responded affirmatively and began to strike out or cross out the provisions discussed, regarding the particular debt amounts, from the final documents.

From reviewing the transcript of the proceeding and the court record, it appears Ms. Cook's counsel may have crossed out or struck out more than was necessary on the agreed dissolution decree. The findings of fact and conclusions of law regarding the dissolution provide, under the community liabilities section, that: "a Visa credit card account number [ending in 6256 with the account balance struck out] and a Visa credit card account number [ending in 8897 with the account balance struck out] for a total debt

regarding the Alaskan rental house." CP at 17. The dissolution decree specifically provides, under the liabilities to be paid by the parties, that each is responsible for "one half of the ['community credit card' is struck out] debt associated with the property in Alaska [specific amount struck out]." *Id*. at 24. In addition to these provisions, the dissolution decree has a hold harmless provision and, where the decree discusses child support, it provides that both parties agree "to drop their competing claims for back reimbursement and have further agreed to call the competing claims a 'wash' for purposes of resolution." *Id*. at 25.

On January 31, 2007, the trial court entered an order involving the proceeds from the sale of the "family home," and ordered that costs associated with the Alaska property be determined within 30 days, along with clarification of the reimbursement issue. *Id*. at 30. On March 16, an agreed order was entered resolving the issue of reimbursement regarding the sale proceeds from the family home, however the Alaska debt was not mentioned in that order.

On August 4, 2008, Mr. Baxter filed a motion to compel Ms. Cook to comply with the property settlement agreement, and he sought fees and sanctions. In support of his motion, Mr. Baxter attached credit card statements and showed his attempt to trace all of the debt from the credit cards associated with the Alaska property. Mr. Baxter's

declaration provided that in May 2006 the debt between the two involved credit cards was

$33,874.62, and on August 4, 2008, the remaining balance of the debt was $24,550.73.

This latest amount, for the total remaining debt, did not include interest, and Mr. Baxter

requested that Ms. Cook reimburse him half of what he had already paid toward the debt,

specifically $10,375.70, along with half of what was left remaining on the debt. Mr.

Baxter also explained that to reduce interest fees, and obtain a year's free interest on one

of the credit cards, he had to make balance transfers from one credit card to another;

which is evidenced in his tracing documents.

On February 11, 2009, the trial court heard argument from the parties regarding

Mr. Baxter's motion to compel, as well as other pending motions. Ms. Cook asserted a

technical defense to Mr. Baxter's motion. She claimed Mr. Baxter was not entitled to

enforce the debt agreement because the credit card particulars on the decree of dissolution

had been scratched out, and because Mr. Baxter had failed to supply information

regarding the debt within 30 days as required in the January 31, 2007 order. Six days

after this hearing, the trial court issued a letter ruling dealing with the various issues

presented at the hearing and, as to Mr. Baxter's motion to compel compliance with the

property settlement agreement, it stated:

> Mr. Baxter asserts that [Ms. Cook] is responsible for one-half of a
> community debt of at least $33,874.62 that was established by an agreement

5

> before Commissioner Royce Moe on June 29, 2006. The transcript of the
> hearing confirms this. It is worth noting that attorneys have come and gone
> since that hearing. Nevertheless, that finding remains the law of the case.
> Commissioner Moe took the sworn confirmations of both parties as to their
> assent. [Ms. Cook's] response may argue the basis of the finding, but this
> court is firmly persuaded that an agreement was established per CR 2A.
>
> Mr. Baxter is entitled to the benefit of the bargain struck with the approval
> of the court. He is entitled to costs associated with the non-payment (fees,
> interest) of approximately $11,825 (one-half of $23,400). Attorney fees
> will be awarded upon a certificate showing properly segregated time related
> to this claim.

CP at 477. On May 11, 2009, the trial court entered an order regarding the hearing held

February 11, which incorporated the court's letter ruling. The order specifically stated

that "[Mr. Baxter's] Motion to Compel Compliance with Property Settlement Agreement

is granted. [Mr. Baxter] is entitled to costs associated with the non-payment (fees,

interest) of approximately $11,825 or one half of $23,400[,]" and awarded Mr. Baxter

attorney fees in the amount of $2,693.50. *Id.* at 486. Ms. Cook filed a notice of appeal as

to this order on June 10, 2009.

Prior to Ms. Cook's filing of her notice of appeal, Mr. Baxter filed a motion

to clarify the May 2009 order and for entry of judgment summary nunc pro tunc.

Mr. Baxter's motion stated that the order required clarification, or a minor revision,

because "it failed to properly incorporate the court's findings into the court's order with

regard to [its] allocation of the credit card debt addressed in [its] written correspondence

6

which was incorporated by reference into the court's order." *Id*. at 489. Mr. Baxter requested that the following language be entered to clarify the current order: "It is ordered that Mr. and Mrs. Baxter are responsible for one half of the credit card debt as set forth in [Mr. Baxter's] motion dated August 4, 2008 in the amount of $33,874.62 or $16,937.31 for each party." *Id*.

Ms. Cook opposed Mr. Baxter's motion at a hearing on June 30, 2009, and argued that this was not merely a clarification, it was instead a modification, and that because she filed a notice of appeal Mr. Baxter's counsel needed to request permission from the Court of Appeals to change the order. Mr. Baxter's counsel argued this was a drafting error, similar to a scrivener's error, which needed to be corrected so the order aligned with what the court concluded in its letter ruling, which therefore does not constitute a modification of the ultimate decision. The trial court agreed with Mr. Baxter's counsel and stated it was "clear that the intention of the Court didn't end up in the final documents. That, I think, falls within the realm of CR 60(a). I think [Mr. Baxter's counsel] described it as a scrivener's error. I think that that is within the concept of either CR 60(a) or under [CR] 60(b)(11)." Report of Proceeding (RP) (June 30, 2009) at 7. The court concluded that "[t]he substance of the order should reflect what the Court's intention was," and entered

7

an amended order incorporating the language requested by Mr. Baxter along with an

updated judgment summary. *Id*. at 7-8; CP at 509-13.

*Parenting plan*

On May 11, 2006, the trial court entered an agreed final parenting plan, the same

plan that was incorporated several months later into the parties' dissolution decree. The

parenting plan established equal residential time for the parties with their son, but neither

parent was designated as the custodian of the child. By the time the parties' final

dissolution decree was entered in August 2006, their son was four years old.

Pertinent to this appeal, Ms. Cook filed a petition to modify the parenting plan

on September 30, 2009. At the time of the petition, the parties' son was seven years old.

Ms. Cook's petition was made pursuant to RCW 26.09.260(5) and (8) (pertaining to

minor modifications). Ms. Cook alleged there had been a substantial change of

circumstances due to her acceptance of employment in Wyoming. In support of her

motion, Ms. Cook filed a declaration setting forth the reasons why it would be in the best

interests of the parties' son to move to Wyoming with Ms. Cook. Ms. Cook organized

her analysis under the factors set forth at RCW 26.09.187 (regarding criteria for

establishing a parenting plan).

The trial court found adequate cause to proceed on Ms. Cook's petition and ordered the matter scheduled for trial. A guardian ad litem (GAL) was eventually appointed for the limited purpose of assessing the emotional impact that modification would have on the parties' son. Just over a month before trial, the GAL filed a report and recommended that the trial court's modification decision be guided by RCW 26.09.520.

After the conclusion of trial, the court entered an order denying Ms. Cook's petition for modification and awarded primary residential placement to Mr. Baxter based on the harm that would be caused to the parties' son by moving him to Wyoming. The court noted that the relocation statute, RCW 26.09.520, was technically not applicable. Nevertheless, the court agreed with the GAL that review of the relocation factors set forth in RCW 26.09.520, which were similar to the factors set forth at RCW 26.09.187, was appropriate under the circumstances. In reviewing RCW 26.09.520, the trial court specifically noted that because neither party previously had primary residential placement, no presumption applied to either party's request for placement.

ANALYSIS

*Credit card debt*

Ms. Cook argues the trial court erroneously enforced the parties' settlement agreement regarding credit card debt because (1) the original agreement was

9

unenforceable as it was missing a material term, i.e., the amount of debt, (2) the requirement to pay credit card debt was changed to a requirement to pay debt on the Alaska property, (3) Mr. Baxter failed in his obligation to determine the amount of the credit card debt in a timely manner, and (4) the trial court improperly amended its order requiring payment of credit card debt after a notice of appeal had been filed.

We are unpersuaded by Ms. Cook's challenges:

- The parties' original credit card agreement was sufficiently specific to permit enforcement. Although no money amount was listed, the agreement referred to the account numbers at issue and specified an equal split of the debt. This information was sufficiently specific to permit enforcement.

- Contrary to Ms. Cook's suggestion, the trial court never altered the parties' agreement to pay one-half of the credit card debt. The credit card debt was referred to as debt regarding the parties' "Alaskan rental house." CP at 17. Thus, when the parties' divorce decree specified that the parties were each responsible for one-half of the debt associated with property in Alaska, this reference pertained to the credit card debt.

- While the January 31, 2007, order regarding proceeds of the sale of the parties' home directed that the costs regarding the Alaska property were to be determined

within 30 days, the order never clarified which party was responsible for
clarification or what the consequence would be for noncompliance. Thus, the
failure to meet the terms of the January 31 order did not nullify the parties' prior
credit card agreement.

- Finally, the trial court did not violate RAP 7.2(e) when it issued an amended order
  regarding the parties' credit card debt. The amended order did not change the
  nature of the underlying order, it simply clarified that by owing one-half of the
  Alaska property credit card debt, Ms. Cook owed one-half of the amounts already
  paid by Mr. Baxter and one-half of the amounts yet to be paid. This type of
  clarification does not require leave of the appellate court under RAP 7.2(e). *Olsen
  Media v. Energy Sciences, Inc.*, 32 Wn. App. 579, 587-88, 648 P.2d 493 (1982).

*Parenting plan*

Ms. Cook argues that the trial court abused its discretion when it referenced the
relocation factors set forth in RCW 26.09.520 in determining placement of the parties'
child. We disagree with this assessment. The trial court recognized that RCW 26.09.520
was technically not applicable to the parties' circumstances and that Ms. Cook's petition
fell under RCW 26.09.260 (a modification based on substantial change of circumstances)
in that this was "not a clearcut relocation case." RP (Oct. 20, 2010) at 484. The trial

court merely referenced RCW 26.09.520 because, as suggested by the GAL, that statute lists factors relevant to the best interests of the child when a parent has changed a principal place of residence. Consistent with *In re Marriage of Worthley*, 198 Wn. App. 419, 430-31, 393 P.3d 859 (2017), the trial court did not consider the interests of the parents in determining placement of the parties' child. Instead, the court looked to RCW 26.09.520 only for guidance on what factors were relevant to the best interests of the parties' child. This approach was fully appropriate. *See In re Marriage of Murphy*, 48 Wn. App. 196, 199-200, 737 P.2d 1319 (1987).

## CONCLUSION

The orders on appeal are affirmed. We decline to award attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                              Fearing, J.

12